**HENRY v. DOLLEY et al.**

No. 1648.

Circuit Court of Appeals, Tenth Circuit.

Sept. 13, 1938.

Rehearing Denied Oct. 26, 1938.

B. F. Napheys, Jr., of Abilene, Kan. (Stewart Lynch, of Wilmington, Del., on the brief), for appellant.

Walter T. Chaney, of Topeka, Kan. (Roland Boynton, Clayton E. Kline, Ralph W. Oman, Tinkham Veale, Stone, McClure, Webb, Johnson & Oman, and Doran, Kline, Cosgrove, Jeffrey & Russell, all of Topeka, Kan., on the brief), for appellees..

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

On May 28, 1936, the United Stores Company, a corporation, was duly adjudged a bankrupt on its voluntary petition.

On June 19, 1936, William C. A. Henry and Lark O. Verckler, as trustees of the United Telephone and Electric Company, hereinafter called the Telephone Company, appointed by the District Court of the United States for the District of Delaware in a proceeding under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, filed a claim against the bankrupt for $592,350.00 principal and $95,979.69 interest based on a promissory note issued by the bankrupt under date of January 31, 1934. The trustee of the bankrupt and fifteen of its creditors filed exceptions to the claim, setting up as one of the grounds that from the time of its incorporation the bankrupt had been operated as a mere department, agent, or instrumentality of the Telephone Company. The referee offset dividends paid by the bankrupt to the Telephone Company and allowed the claim in the amount of $443,602.47, but subordinated it to the claims of other general creditors of the bankrupt. From an affirmance thereof by the district court, the Telephone Company has appealed.

The bankrupt was organized under the laws of Kansas in 1926 and was engaged in the business of operating a chain of retail grocery stores.

The Telephone Company was incorporated under the laws of Delaware in 1925. It has engaged in no business or commercial enterprise of any kind except the purchasing and holding of stock of other corporations. It has some sixty subsidiary companies, including the bankrupt. It had its principal office at Abilene, Kansas, in what is known as the Brown Building, from the date of its incorporation until October, 1934, when its offices were moved to Wilmington, Delaware. A great many of the subsidiaries, including the bankrupt, also had offices in the Brown Building. They were generally known as the United Companies.

The United Fruit and Grocery Company, hereinafter called the Grocery Company, a subsidiary of the bankrupt, was operated by the latter as its purchasing department from 1934 until the adjudication in bankruptcy. All orders for merchandise were prepared by the bankrupt upon standard form orders headed "United Fruit and Grocery Company" and the merchandise was paid for by the bankrupt.

In 1926, three of the officers and directors of the Telephone Company were officers and directors of the bankrupt; in 1927, there were four common officers and directors; in 1928 five; in 1929 seven; in 1930, 1931, 1932, and 1933 nine; and in 1934 eight. Verckler was president of the Telephone Company from 1925 to 1929, inclusive, and vice president of the bankrupt from 1926 until C. L. Brown's death in November, 1935, when he became its president. Brown was president of the Telephone Company from 1930 until his death and president of the bankrupt from 1926 until his death. H. W. Rohrer was treasurer of practically all the United Companies, including the Telephone Company and the bankrupt, from 1928 until October, 1934, and M. C. Beamer was secretary of the United Companies from 1927 to 1933, inclusive.

Brown and the Brown Memorial Foundation, which he controlled, from the incorporation of the Telephone Company until Brown's death in November, 1935, owned a majority of the voting stock in the Telephone Company. Brown also owned a majority of the common stock in the bankrupt until December, 1932, at which time he transferred it to the Telephone Company. Brown, through stock ownership in the Telephone Company and the other United Companies, dominated and controlled the entire corporate group.

The Telephone Company acquired 780 shares of the common stock of the bankrupt on June 30, 1929, and 2500 additional shares of such common stock on December 31, 1932. From and after May 31, 1933, the Telephone Company owned 3297 shares of a total issue of 3902 shares of common stock of the bankrupt.

The United Companies had an executive committee which acted for the Telephone Company and also for its subsidiaries. This committee consisted of the operating managers of the companies and other persons employed at the general office, some of whom were neither officers nor directors of any of the companies. The committee met once a week in Brown's office. Brown presided at the meetings. The operations of the various United Companies were generally discussed and considered. The members of the committee were permitted to offer suggestions, but they were carried out only when they met with Brown's approval. Brown dominated the meetings and dictated what was to be done. Dividends were declared and paid at Brown's direction. Some of the committee objected to the payment of certain dividends because they had investigated and found there were no earnings available for the payment thereof.

The bankrupt since its incorporation, if proper allowances had been made for depreciation, never made any net earnings. Nevertheless, from August, 1927, to May, 1933, it declared and paid dividends in the aggregate of $376,299.96, of which amount $244,727.22 was paid to the Telephone Company. These dividends were paid at the direction of Brown with funds advanced by the Telephone Company.

All matters dealing with finance were handled by Brown and advances from one company to another were made at his personal direction.

Whenever the bankrupt needed money its operating manager usually told Brown how much was needed and Brown directed the Telephone Company to make the necessary advances. In certain instances the advances were made over the protest of members of the executive committee. The advances were effected by book entries in the office of the treasurer of the United Companies. These advances were carried in the form of demand notes. However, in annual reports filed by the bankrupt with the Secretary of State of Kansas for the years 1931 to 1934, inclusive, they were listed as long-term obligations.

The officers of the United Companies received their salaries from a common account carried as the Paymaster's Account. The various department heads in the general offices made up allocations of salaries for their employees and delivered same to the paymaster. Each company then paid over to the paymaster the amount of salaries allocated to it. Brown fixed the salaries of the various officers, determined their positions, and removed them at will.

On April 28, 1931, George P. Taylor, vice president of the Telephone Company and also of the bankrupt, wrote E. E. Anderson, general auditor of the United Companies, that he had talked with Brown and the finance committee about the Grocery Company's statement and it had been decided that the Telephone Company would loan the bankrupt $120,000.00; that the bankrupt would then advance such amount to the Grocery Company as "a donation to capital stock"; that the Grocery Company would then pay its note to the Telephone Company, and the bankrupt would also make a "donation to capital stock" of the Grocery Company in an amount equal to the note that company owed the bankrupt. Taylor directed that the transactions be carried out and the result reflected in the April statement of the Grocery Company because creditors were demanding a financial statement.

On December 7, 1932, Anderson wrote Mills, general manager of the bankrupt, that he had received a call from Swift & Company regarding a financial statement of the bankrupt and had advised Swift & Company it was not going to furnish a statement since all purchases were made by the Grocery Company; that Brown had issued instructions not to render any such statement; that he had talked to the treasurer in regard to a new set-up of the bankrupt before December 31, 1932, so that the statement of the bankrupt would be made presentable.

In December, 1932, the Notes Payable Account of the bankrupt reflected a note due the Telephone Company of $948,880.00 and its balance sheet indicated that its liabilities exceeded its assets in the amount of $446,826.72. The indebtedness of the bankrupt was reduced $450,000.00 without any consideration passing between the bankrupt and the Telephone Company. The transaction was handled as follows: The Notes Payable Account of the bankrupt was reduced by $450,000.00 and its assets credited with that amount, making a surplus over liabilities of $3,173.28. The Notes Receivable Account of the Telephone Company was reduced $450,000.00 and the Surplus Account charged $200,000.00. Brown and other officers of the various companies in consideration of one dollar a share transferred to the Telephone Company 2447 shares of the bankrupt's stock, which the Telephone Company set up in its Investment Account at $250,000.00. No consideration passed from the bankrupt to the Telephone Company. The transaction was undoubtedly made to improve ostensibly the balance sheet of the bankrupt.

E. T. Schmidt became general manager of the bankrupt during the latter part of 1933. The note held by the Telephone Company was affecting the credit situation of the bankrupt and Schmidt had a conversation with Brown in which the latter stated that $450,000.00 of the indebtedness had been charged off and assured Schmidt that when the proper time came the entire amount of the note would be charged off. Schmidt conveyed the substance of such conversation to creditors of the bankrupt and assured them that the indebtedness from the bankrupt to the Telephone Company would not be permitted to prejudice their claims.

Counsel for the Telephone Company contend that since the claims of the creditors of the bankrupt arose after the inception of the proceeding for reorganization of the Telephone Company under Section 77B of the Bankruptcy Act in the Delaware court, the Telephone Company's claim may not be subordinated to the claims of the general creditors of the bankrupt. We see no force to this contention. The claim of the Telephone Company arose long before the inception of either bankruptcy proceeding, and it is the validity of that claim which is here involved.

Counsel for the Telephone Company further assert that it would be inequitable to the creditors of the Telephone Company to subordinate its claim to the claims of other general creditors of the bankrupt. No creditor of the Telephone Company has intervened in the proceeding and there is no showing that the subordination of the Telephone Company's claim would prejudice its creditors. The trustees of the Telephone Company have not asserted that the assets of that company and the bankrupt should be consolidated and the several creditors of the two companies placed on a parity, and that relief has not been sought either by the trustees or by any creditor of the Telephone Company. This being true, we are of the opinion that the claim must be disposed of on a consideration of the rights of the Telephone Company and the creditors of the bankrupt.

It is well settled in the national courts that corporate entity may be disregarded where not to do so will defeat public convenience, justify wrong, protect fraud, or defend crime.[1]

In Taylor v. Standard Gas & Electric Company, 10 Cir., 96 F.2d 693, 706, this court said:

"Where corporate control by the parent over the subsidiary through stock ownership and the election of directors and officers is exercised in the manner normal and usual with majority stockholders, distinct corporate entity should be recognized. Where, however, the relations between parent and subsidiary are so intimate, the control of the former over the latter so dominating, and the business and assets of the two so commingled, that the recognition of distinct entity will result in wrong or injustice to third persons, courts should look through the fiction of distinct entity and deal with the situation as justice requires."

It is abundantly clear from the evidence that from May, 1933, on, the relations between the Telephone Company and the bankrupt were so intimate, the control of the former over the latter so dominating, and the business and assets of the two so commingled, that to recognize the corporate entity of the two companies and to permit the Telephone Company to assert its claim against the bankrupt on a parity with other general creditors of the bankrupt would work a gross fraud and injustice upon such creditors.

The referee offset against the claim of the Telephone Company the amount of dividends received by it from the bankrupt. Since the dividends were clearly illegally paid, this offset was proper.

Let the order be affirmed and the costs assessed against the Telephone Company.

---

[1] Dunnett v. Arn, 10 Cir., 71 F.2d 912, 918; Boatright v. Steinite Radio Corp., 10 Cir., 46 F.2d 385, 388; Pierce v. National Bank of Commerce, 8 Cir., 13 F.2d 40, 47; Smith v. Moore, 9 Cir., 199 F. 689, 700; McCaskill Co. v. United States, 216 U.S. 504, 515, 30 S.Ct. 386, 54 L.Ed. 590.