## GARDEN CITY CO. et al. v. BURDEN.

### No. 4106.

United States Court of Appeals
Tenth Circuit.

Jan. 2, 1951.

J. E. DuMars, Topeka, Kan. (Clayton M. Davis and Mark L. Bennet, Topeka, Kan., on the brief), for appellants.

Paul R. Kitch, Wichita, Kan. (Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Dale M. Stuckey and Donald R. Newkirk, all of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This action was filed in the United States District Court for the District of Kansas, against the Garden City Company, herein referred to as Garden City, and United States Irrigating Company, herein called the Irrigation Company, for dam-

ages to plaintiff's alfalfa land caused by the negligence of the defendants in the operation of the Great Eastern Canal an irrigation canal crossing plaintiff's land. The Irrigation Company is the owner of the irrigation ditch in question. Garden City is a Colorado corporation and the Irrigation Company is a Wyoming corporation.

In brief, the complaint as finally constituted, alleged that the Irrigation Company is a wholly owned subsidiary of Garden City; that Garden City owns all the shares of stock in the Irrigation Company; that the two companies have common management and interlocking directorates and offices; that the Irrigation Company was organized and is maintained and operated for the sole purpose of carrying out the aims and purposes and promoting the affairs of the parent, Garden City, and is a mere instrumentality and adjunct thereof, being completely dominated and controlled by it, and that by reason thereof, the acts of the Irrigation Company in the operation and maintenance of the Great Eastern Canal were in truth and fact the acts of Garden City and that it was liable for the wrongs complained of.

For cause of action, plaintiff alleged his ownership of some 280 acres of agricultural land being farmed under irrigation with water from an irrigation ditch known as the Amazon. The complaint alleged that defendants owned and operated an irrigation ditch known as the Great Eastern Canal; that said canal passed across plaintiff's farm and extended for approximately half a mile across the westerly and northerly sides thereof. The following acts of negligence were alleged: The defendants had failed to maintain the ditch in proper repair, had failed to repair various spillways, had failed to keep the bottom of the ditch free from sand, and had failed to replace worn out wooden openings in the ditch and had permitted the banks, particularly at plaintiff's farm, to be in an unsafe condition.

The complaint further alleged that beginning with 1947, defendants had caused a large quantity of water to be transported through the defective canal and that by reason thereof 30 acres of his alfalfa land was inundated through seepage of water to his damage in the sum of $6,000.00. That on June 4, 1949, a flood occurred, caused by heavy rains; that by reason of the defective condition of the canal it was unable to safely carry the great volume of water injected into it; That as a result the banks gave way, flooding and ruining about 100 acres of plaintiff's land, causing a total loss of crops valued at $4,000.00, and permanently injuring the land to the extent of $21,000.00. The Garden City Company denied that it was the owner of the ditch or that it had any part in its operation, control, or maintenance. The Irrigation Company denied any negligence on its part in the operation of the ditch and alleged that any loss suffered by plaintiff was the result of rains of such unprecedented proportions as to amount to an act of God. Trial was had to a jury resulting in a verdict against defendants for $8,500.00, on which judgment was entered and this appeal followed.

The first assignment of error is that there was a misjoinder of parties defendant. This is predicated on the contention that the record clearly establishes that the two corporations are separate entities and that Garden City had no part in the management, control or operation of the irrigation ditch. The court, under appropriate instruction, submitted this question to the jury and instructed it that in the event it found that Garden City in fact operated and controlled the Irrigation Company for its own purposes, then Garden City would be liable for any acts of negligence on the part of the Irrigation Company. The jury evidently concluded that the Irrigation Company was the alter ego of Garden City, because it returned a verdict against it.

We agree with the jury's findings in this respect. There is no conflict in the authorities as to the legal principles controlling a determination whether the separate legal entity of two corporations must be disregarded and they be treated

as one. As stated by Judge Phillips in Taylor v. Standard Gas & Electric Co., 10 Cir., 96 F.2d 693,[1] the fact that one corporation owns all of the stock of another and thereby selects from its own directors and officers a majority or all of the directors of the other, or that a parent finances a subsidiary is, without more, not sufficient to warrant disregarding the separate legal entity and treating them as one. But it is also stated in the same opinion that where the relationship between the parent and its subsidiary is so intimate, the parent's control over the subsidiary is so dominating and the business and assets of the two so commingled, that recognition of distinct entity would result in injustice to third persons, courts should look through the legal fiction of separate entity and treat them as justice requires.[2] While this was held in a bankruptcy proceeding involving the parent and its subsidiary, the legal principles apply generally in all cases.

The Irrigation Company was a non profit corporation and as such had no capital. All of its stock was owned by the Garden City Company. Eighty-six per cent of all of its water rights was owned by Garden City. It depended upon Garden City for its financing. No interest was charged by Garden City for money advanced to the Irrigation Company. Two regular employees of the Irrigation Company were paid by Garden City and at the end of the year their salary was charged against the account of the Irrigation Company with Garden City. All of the directors, and officers of the Irrigation Company were directors, officers or employees of Garden City. They received all their pay from Garden City and none from the Irrigation Company. W. E. Leavitt was the Treasurer and General Manager of Garden City, and was President and General Manager of the Irrigation Company. He testified that while there were no contractual relations between the two companies, yet, if the Board of Directors of Garden City should give him instructions as to what to do relative to the Irrigation Company's ditch, he would follow such instructions. Garden City has paid the Irrigation Company's current water right assessments but has not paid back assessments in the sum of $91,000.00, less the current assessments. The testimony was that these back assessments constituted a bookkeeping transaction between the two companies.

Charles F. Edwards, the Secretary-Treasurer of the Irrigation Company is paid by Garden City and receives no pay from the Irrigation Company. He testified that the $91,000.00 indebtedness of Irrigation Company was incurred in rebuilding the Hartland dam. The Irrigation Company maintains no offices other than those incident to the offices occupied by employees or officers in their position with Garden City. The name Irrigation Company appears nowhere on any of the offices occupied by its officers and it has no telephone listing. Garden City as the owner of all the stock of the Irrigation Company is the only voter at Irrigation Company's elections.

It is difficult to envision a more complete oneness than exists between these two companies. Garden City Company owns, controls and directs all operations of the Irrigation Company. There is also evidence that when the ditch was repaired and cleaned out it was done with equipment belonging to Garden City and bearing its name on the equipment. Irrigation Company had no assets, it owns no property other than the easement in the ditch. Under these circumstances, it would be inequitable to permit Garden City to escape liability, if such there is, because of negligent operation of the ditch under the pretext of the separate identity of the two corporations.

It is further contended that there is no evidence of negligence supporting the verdict and judgment and that any damage

1. Reversed on other grounds in 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669.

2. Henry v. Dolley, 10 Cir., 99 F.2d 94; Feucht v. Real Silk Hosiery Mills, 105. Ind.App. 405, 12 N.E.2d 1019; Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 73 A.2d 905.

suffered by Burden was the result of an act of God. On June 3, 4, and 5, 1949, 7.58 inches of rain fell in the Lakin area where this ditch is located. The fall on June 3 was .93 inches, on June 4, 1.35 inches, and on June 5, 5.30 inches. The heaviest rainfall recorded in a twenty-four hour period prior thereto was 4.55 inches in August, 1926. The record does not reveal whether rain fell on that occasion on other days close to the day on which 4.55 inches fell, but even if we consider the fall of 4.55 inches as against the total three days' fall of 1949 of 7.58 inches, we do not think the disparity is so great as to require a finding, as a matter of law, that such a rain was an act of God.[3] But even if we assume that this rainfall constituted an act of God, it does not require a reversal of the judgment. The court, in effect, instructed the jury that if the rainfall constituted an act of God, and was the sole cause of the damage, Burden could not recover. The jury's verdict means that either it did not consider that this rainfall amounted to an act of God or that if it did, it was not the proximate or sole cause of the injury.

■ The court properly instructed the jury that defendant would not be relieved from liability even though the rainfall was beyond that which could have been anticipated if negligent acts on their part concurred therewith to produce plaintiff's injury.

This brings us to the main contention that there is no evidence of negligence on defendants' part in the maintenance and operation of the ditch to support the verdict and judgment entered thereon.

At the outset, we may say that there is evidence, which, taken alone, makes a case of non negligence on appellants' part. But since our scope of review is limited to an inquiry whether there is other evidence of probative value which would support a contrary conclusion, we limit our discussion thereto. In 1925, a wooden irrigation box used to release water from the ditch for irrigation had been placed in the bottom of the ditch adjoining Burden's farm. In 1927, the ditch broke at two places, one being at the place where this box was and a larger box was installed. The box filled up with dirt but the man then farming the place dug it out in 1930. That was the last year it was used for irrigation. The box remained in the dam and washed out in the 1949 flood. In 1947, Burden noticed water in his alfalfa field. The water seemed to come from the base of the ditch at a point where the irrigation box was. He notified Leavitt who came out at a time when no water was running in the ditch. Some damage occurred to the alfalfa in 1947. By the fall of 1948, there was additional damage to the alfalfa. In the summer of 1948, Burden observed that the ditch was leaking at this point. After additional complaints, someone came to the ditch with equipment bearing the name Garden City Company and effected some repairs. In May, 1949, Burden inspected the ditch at this point and saw that it was again leaking. As stated, shortly thereafter this box washed out. There is also evidence that the flood water did not go over the top of the dam, at least not at Burden's farm. If this is so, the break must have first occurred around the irrigation box. The manner in which the irrigation box was sealed off when it was discontinued is in dispute. Appellants produced evidence showing that it was sealed off on the inside by placing 8 feet of dirt against the bank. There was, however, other evidence showing that the wooden box was flush with the inside of the bank of the irrigation ditch. Leavitt, President of the Irrigation Company, admitted that it was not good practice to leave an old wooden box in the bank of an irrigation ditch. R. J. Tipton, an engineer produced by appellants, admitted that it would be poor practice to leave an old wooden box in the operating bank of an irrigation ditch. Dan C. Moehring, an engineer, testified for Burden that the proper method of

3. Riddle v. Chicago R. I. & P. Ry. Co., 88 Kan. 248, 128 P. 195; Law v. Gulf States Steel Co., 229 Ala. 305, 156 So. 835; Zollman v. Baltimore & O. S. W. R. Co., 70 Ind.App. 395, 121 N.E. 135.

repairing a ditch when such a box was discontinued was to remove it and fill the aperture with dirt, first treating the banks so as to provide a good seal between the existing earth of the dyke and the material used to make the repair. In response to a hypothetical question, he testified that in his opinion the cause of the break was the weakened condition of the bank caused by the improper filling of the old wooden box. The objections lodged to the hypothetical question propounded to him are without substantial merit.

 There is other evidence which would support a finding of negligence in the operation and maintenance of the dam. We do not recount it because the evidence outlined above, if believed, as it no doubt was, is sufficient to support the conclusion that the break occurred around this old wooden box and that appellants were guilty of negligence in the manner in which they treated it after its use was discontinued and that this was the proximate cause of the injury suffered.

It is urged the trial court erred in its instructions numbered 7, 8, 14, 15, 17, and 18. After the court had instructed the jury, the following proceedings were had before the court and out of hearing of the jury.

"By the Court: Do any of you have any further objections or suggestions relative to the instructions of the Court?

"Mr. Davis: I would like to enter objections to a few of them for the purpose of the record.

"The Court: Very well.

"Mr. Davis: Comes now the defendants and objects to the instruction of the court No. 7, 8, 14, 15, 17, 18, for the reason that such instructions incorrectly state the law applicable to the issues in the case.

"The Court: Overruled."

Rule 51 of the Rules of Civil Procedure, 28 U.S.C.A., provides that: " * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. * * *"

It will be seen that appellants failed to comply with the rule and may therefore not predicate reversible error on the instructions as given.[4]

We have, however, examined the instructions and find no reversible error therein when considered in their entirety. Neither do we find any merit in the contention that the amount of the verdict and judgment are excessive.

Affirmed.

---

4. Stillwell v. Hertz Drivurself Stations, 3 Cir., 174 F.2d 714; Hower v. Roberts, 8 Cir., 153 F.2d 726; Palmer v. Miller, 8 Cir., 145 F.2d 926.