**Thomas J. FITZGERALD, Trustee, Appellant,**

v.

**The CENTRAL BANK AND TRUST COMPANY, Appellee.**

**No. 5821.**

United States Court of Appeals
Tenth Circuit.

July 8, 1958.

Frederick P. Cranston and Herbert W. Delaney, Jr., Denver, Colo. (L. James Arthur, Denver, Colo., was with them on the brief), for appellant.

Clarence L. Ireland, Denver, Colo. (Ireland, Ireland, Stapleton & Pryor, Denver, Colo., was with him on the brief), for appellee.

Before BRATTON, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

BRATTON, Chief Judge.

This appeal brings here for review an order of the district court affirming an order of the referee in bankruptcy allowing a preferred claim in a proceeding in bankruptcy. Platte Valley Elevators Company, a corporation, hereinafter referred to as the bankrupt, filed a voluntary petition in bankruptcy and was seasonably adjudicated a bankrupt. Central Bank and Trust Company, hereinafter referred to as the bank, filed its secured claim, based upon a promissory note in the sum of $100,000, secured by a duly filed and recorded chattel mortgage upon the equipment and building of the bankrupt which stood on leased land, and also secured by an assignment of the lease of the land upon which the building stood. The trustee in bankruptcy filed objections to the allowance of the claim in any amount in excess of $33,000 upon the ground that the bankrupt was not the real borrower from the bank; that the real borrower was R. S. Berger, president of the bankrupt, doing business as Berger Sales Company; and that Berger, or Berger Sales Company, hereinafter referred to as the sales company, was the debtor of the bank. At the time the note and mortgage and assignment were given to the bank, the property was subject to an outstanding note and mortgage in the sum of $33,000 held by a third party. The bank acquired such note and mortgage. With the consent of the bank, the trustee sold the mortgaged assets for $71,500. Out of the proceeds of the sale, the referee authorized the trustee to make certain payments, including $33,000 in discharge of the note and mortgage in that amount which the bank had acquired from the third party. After making the payments authorized by the referee, $30,147.38 remained in the hands of the trustee. A hearing was had upon the claim of the bank. The referee entered an order directing payment to the bank of $30,147.38, and allowing the remainder of the claim of the bank in the sum of

$34,117.11 as an unsecured claim. On review, the district court affirmed the order of the referee. The trustee appealed.

The order of the district court affirming the order of the referee is challenged upon the ground that the evidence failed to establish the validity of the claim of the bank for any amount in excess of $33,000. Specifically, the argument is that the claim was not predicated upon an obligation of the bankrupt, and that instead it was predicated upon an obligation of Berger, doing business as the sales company. It is the well established general rule that ordinarily a corporation is regarded as a legal entity separate and distinct from its members. But the fiction of separate existence may be disregarded and the acts of the members treated as acts of the corporation where circumstances warrant it. The conditions under which the corporate entity may be disregarded, or the corporation treated as the alter ego of its members, necessarily vary according to the circumstances in each case. But it may be said in general terms that the doctrine is an equitable one appropriate for application to prevent fraud, injustice, or wrong. Henry v. Dolley, 10 Cir., 99 F.2d 94; Fish v. East, 10 Cir., 114 F.2d 177; Warner Bros. Theatres v. Cooper Foundation, 10 Cir., 189 F.2d 825.

Bearing in mind the general equitable rule to which reference has been made, we turn to the evidence. Evidence was adduced which tended to establish these facts and circumstances. The bankrupt was engaged in the business of buying, storing, and selling beans and other similar merchandise at Sterling, Colorado. Berger was its president and controlling officer. Acting under the trade name of the sales company, Berger was also engaged in the business of buying, storing, and selling beans of various kinds at Sterling. In 1949, the bankrupt and the sales company entered into a written contract which provided that for the period of five years thereafter the sales company should have the exclusive first option or right to buy all beans shipped, stored, or sold by the bankrupt upon a commission to be determined in August of each year during the term of the contract. P. Berger signed the contract on behalf of the bankrupt, and R. S. Berger signed it on behalf of the sales company. The bankrupt carried its checking account in a bank at Sterling. The sales company carried its checking account in the claimant bank at Denver. The ledger account in the claimant bank was carried in the name of the sales company but the name of the bankrupt was written in pencil in a diagonal position across the top of the ledger sheets. The same person was secretary of the bankrupt, had charge of the books of the bankrupt, and was bookkeeper of the sales company. The books of neither company were complete. While the books did not disclose an undue amount of errors, they were incomplete for failure to reflect all of the intercompany transactions. The sales company met with financial reverses. Check kiting operations were employed. The account of the sales company became unsatisfactory to the bank, and the bank suggested to Berger that it be discontinued. Berger demurred to the suggestion upon the ground that he was not known in the trade as Platte Valley Elevators; that he desired to use the trade name; and that the sales company was only an agency of the bankrupt. The bankrupt did not carry an account with the claimant bank, but after Berger declined to discontinue operations as the sales company, the bank required that all notes secured by warehouse receipts be signed by the bankrupt, and the bankrupt complied with the requirement. The checking account of the sales company had become overdrawn to the extent of $67,000 to $70,000. The overdraft was caused in part by permitting the sales company to check against deposits of uncollected drafts which were not honored, and in part by the check kiting operations. The bankrupt was involved in some of the check kiting transactions. An expert witness expressed the view that through means of the check kiting practices, the bankrupt received from the account of the sales company in the bank a net

amount of slightly more than $70,000. Berger sought to obtain a loan from the bank. The loan was to be made on the plant of the bankrupt and was to be insured or guaranteed by Small Business Administration. The application submitted to Small Business Administration was for $125,000. Small Business Administration indicated that it would consider insuring or guaranteeing to the extent of sixty per cent a loan of $100,000. The bank advised Berger that it would consider making a temporary loan as a stop-gap until the loan could be effectuated through channels of Small Business Administration. With that understanding, the note, mortgage, and assignment were given to the bank. Upon receipt of a final statement of the bankrupt, Small Business Administration declined to insure or guarantee any part of a permanent loan. The proceeds of the loan made by the bank were credited to the sales company; the bank applied such proceeds to eliminate the overdraft in the checking account of the sales company, and to pay certain obligations which the bank had guaranteed. A balance of $3,-912.47 remained. The balance was paid to the sales company, and the checking account in the bank was closed. Later, the bank made statements to the effect that the proceeds of the loan went to Berger's credit. From this review of the facts and circumstances, it is manifest that Berger was the president of the bankrupt, was the sole owner of the sales company, and directed, dominated, and controlled both. The bankrupt and the sales company were interlocked and interwoven in their general business activities. The bankrupt was the business conduit of its dominating and controlling figure, Berger, doing business under the trade name of the sales company. The separateness in legal identity of the two should be disregarded as a means of preventing fraud, injustice, and wrong; and the claim of the bank in excess of $33,000 should be treated as the debt of both.

The order is

Affirmed.