SELECTED INVESTMENTS CORPORA-TION, a corporation, Appellants,

v.

Paul C. DUNCAN, trustee in bankruptcy, of Selected Investments Corporation, a corporation, and Selected Investments Trust Fund, et al., Appellees.

J. S. PLEDGER, Appellant,

v.

SELECTED INVESTMENTS CORPORA-TION et al., Appellees.

SELECTED INVESTMENTS CORPORA-TION et al., Appellants,

v.

Paul C. DUNCAN, Trustee, et al., Appellees.

Walter D. HART et al., Appellants,

v.

Paul C. DUNCAN, Trustee, et al., Appellees.

O'BRYAN, O'BRYAN & O'BRYAN, et al., Appellants,

v.

Paul C. DUNCAN, Trustee, et al., Appellees.

Nos. 5854, 5855, 5950, 5975, 5976.

United States Court of Appeals
Tenth Circuit.

Oct. 14, 1958.

Rehearing Denied in Nos. 5975, 5976
Nov. 10, 1958.

Herbert K. Hyde, Oklahoma City, Okl., for Selected Investments Corp., Selected Investments Trust Fund, Linwood O. Neal, Trustee, Hugh A. Carroll, and Julia L. Moore Carroll.

W. H. Pat O'Bryan, Oklahoma City, Okl., for O'Bryan, O'Bryan & O'Bryan.

George Zolotar, New York City, for Walter D. Hart and Jack Hart.

Sid White, Oklahoma City, Okl., for Louie Hamburger, Dan Hamburger, Emma Schneider, and Raymond Schneider.

Paul W. Updegraff, Norman, Okl., for J. S. Pledger.

Charles Hill Johns and Gomer Smith, Jr., Oklahoma City, Okl., for H. P. Willis, and Zona Willis.

Luther Bohanon, Roy C. Lytle, and James D. Fellers, Oklahoma City, Okl., for Paul C. Duncan, Trustee in Bankruptcy.

Thomas G. Meeker, David Ferber, Stuart C. Law, Washington, D. C., and J. Kirk Windle, Chicago, Ill., for Securities and Exchange Commission.

Before BRATTON, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

BRATTON, Chief Judge.

For convenience, reference will sometimes be made to Selected Investments Corporation as the Corporation and to Selected Investments Trust Fund as the Trust Fund. A petition in involuntary bankruptcy was filed against the Corporation. The Corporation answered; a hearing was had; and an order of adjudication was entered. The Corporation and the Trust Fund filed a joint petition for reorganization under Chapter X of the Bankruptcy Act, as amended, 52 Stat. 883, 11 U.S.C.A. § 501 et seq. Treating the Corporation and the Trust Fund as a single entity, the court approved the petition for reorganization; appointed a trustee; authorized the trustee to operate the business assets, property, and affairs of the debtor; stayed the proceedings in involuntary bankruptcy; and stayed all other proceedings affecting the estate of the debtor. Asserting that they were creditors of the debtor, various owners and holders of certificates issued by the Corporation and countersigned by the trustee of the Trust Fund intervened in the reorganization proceeding. Asserting that it had an unpaid claim against the debtor for professional services rendered, the firm of O'Bryan, O'Bryan & O'Bryan filed in the proceeding a petition to vacate and dismiss. The

prayer of the petition was that a hearing be had thereon; that the adjudication in bankruptcy be vacated; and that the petition for involuntary bankruptcy be dismissed. And asserting that they owned and held certificates issued by the Corporation and countersigned by the trustee of the Trust Fund, Walter D. Hart and Jack Hart filed in the proceeding a pleading denominated Certificate Holders' Joinder, Petition and Answer to Dismiss Debtors' Petition under Chapter X. In such pleading, it was pleaded among other things that the petitioners joined in and adopted the petition of the O'Bryans. The prayer was that the involuntary petition in bankruptcy be dismissed; that the order approving the petition for reorganization be vacated; and that the petition for reorganization be dismissed. The pleading filed by the O'Bryans and that filed by the Harts, respectively, were denied. These several appeals in their totality bring here for review the order of adjudication, the order approving the petition for reorganization, the order denying the pleading filed by the O'Bryans, and the order denying the pleading filed by the Harts. The cases were argued together and disposition may be made of them in like manner.

■ The action of the court in treating the Corporation and the Trust Fund as a single entity is challenged. It is argued that the question whether the two are a single entity or separate entities must be determined by the law of Oklahoma, and that under the law of that state they are separate entities to be dealt with in that manner. The case of Selected Investments Corp. v. Oklahoma Tax Commission, Okl., 309 P.2d 267, is relied upon to sustain the contention. That was an action for refund of income tax paid under protest. The ground of attack upon the tax was that the Corporation and the Trust Fund were separate legal entities; that the income involved constituted income to the Trust Fund; and that therefore the Corporation was not liable for the tax. It was held that the Corporation and the Trust Fund were separate legal entities; that the items of income involved constituted income to the Trust Fund; that they were not taxable as income of the Corporation; and that therefore the Corporation should prevail. But that was an action at law. Equitable principles did not control. It is the general rule both in actions at law and in proceedings in equity that existing separateness of legal entities will be respected and preserved. But in an equitable proceeding, the fiction of separate entities may be disregarded and two or more entities treated as one when it becomes necessary to do so in order to prevent fraud, injustice, or wrong. That general rule is frequently applied in determining the separateness of identity of a corporation and its members. Fitzgerald v. Central Bank & Trust Co., 10 Cir., 257 F.2d 118. But it is not limited in application to instances of that kind. It has appropriate application in determining whether under the facts and circumstances in these cases the separateness of entities of the Corporation and the Trust Fund should be disregarded as a means of preventing fraud, injustice, or wrong.

■ These facts and circumstances should be brought into focus in determining whether the court providently disregarded the separateness in legal entity of the Corporation and the Trust Fund and treated the two as a single entity. The Corporation was organized under the law of Oklahoma in December, 1930. A trust indenture was entered into in January, 1931. Provision was made in the indenture for the formation of the Trust Fund as an unincorporated entity, and Security National Bank of Norman, Oklahoma, was named as trustee. The Corporation and the Bank executed the instrument as parties thereto. The indenture contemplated that certificates of indebtedness would be issued by the Corporation, countersigned by the trustee of the Trust Fund, and sold to investors in Oklahoma; that the funds paid by the investors would be placed in the assets of the Trust Fund; and that the funds would be invested in stocks, bonds, and other securities. The indenture vested in the Corporation full power to issue and sell the

certificates, and to manage and control the trust. For about ten years immediately preceding the intervention of receivership in the state court, Linwood O. Neal was trustee of the Trust Fund. But he was merely an empty figure. He was the nominal custodian of the assets of the Trust Fund but he did nothing except to receive funds and disburse them upon the direction and at the command of the Corporation. He was selected as trustee by the Corporation; was subject to removal by the Corporation; and was completely subservient to the control and direction of the Corporation. Hugh A. Carroll, president of the Corporation, completely dominated and controlled both the Corporation and the Trust Fund. And the affairs of the two were managed at least in part for the financial benefit of Carroll, his wife, and a few close associates. The pattern employed in several instances in managing the affairs of the Corporation and the Trust Fund for the financial benefit of Carroll, his wife, and one or more close friends, was to cause funds to be siphoned from the Trust Fund to the Corporation, cause the funds to be passed on to satellite corporations organized or acquired and financed in part with such funds, and then cause the satellite corporations to pay salaries to Carroll, his wife, and the friend or friends ostensibly as compensation for services in the form of advice and supervision. In one instance, a large amount of cash was siphoned from the Trust Fund to the Corporation and then paid by the Corporation direct to Carroll in the form of a loan. And most of the debt remained unpaid at the initiation of bankruptcy. The action of the court in disregarding the separateness of legal identity of the Corporation and the Trust Fund as a means of preventing fraud, injustice, and wrong rested upon solid equitable basis and therefore should not be disturbed on appeal.

The pivotal question to which the contending parties direct with vigor much of their argument is one of jurisdiction of the court to proceed with the reorganization proceeding. The question is whether at the time of the filing of the petition for reorganization, the debtor was insolvent or unable to meet its debts as they matured. And it turns upon whether the relationship of debtor and creditor existed between the debtor and the holders of certificates issued to investors. It is clear that if such relationship did exist, the debtor was insolvent and the court was clothed with jurisdiction to proceed with the reorganization. On the other hand, if the holders of the certificates were merely beneficial owners of proportional shares of the assets of the Trust Fund, the debtor was not insolvent and therefore the court lacked jurisdiction. It is well settled that certificate holders in a conventional common-law trust stand in their relation to the trust much as do stockholders to a corporation. In ordinary circumstances, they are not creditors of the trust. Instead, they are equitable owners of proportional interests in the trust property. Bryan v. Welsh, 10 Cir., 72 F.2d 618. In re Cook, 7 Cir., 104 F.2d 981.

But this business enterprise did not fall within the range of that general rule. As organized, maintained, and operated throughout the twenty-nine years which intervened between the organization of the Corporation and the formation of the Trust Fund, and the initiation of receivership proceedings in the state court, the enterprise bore characteristic earmarks which clearly distinguished the relationship existing between the certificate holders on one hand, and the Corporation and the Trust Fund on the other hand, from that usually existing between holders of ordinary certificates and conventional common-law trusts. The trust indenture authorized the Corporation to issue certificates of the face value of $100 or multiples thereof and to sell them to investors. It provided that the trustee of the Trust Fund should authenticate the certificates and deliver them to purchasers upon the written order of the Corporation and upon payment therefor. It made provision for the redemption of the certificates at the election of the Cor-

poration, or at the election of the holders at any time after three years from issuance. The certificates were to be redeemed in cash, or in kind, or both, the holder to receive his aliquot share of the total valuation of the fund, determined by reference to the face of the certificate. The indenture provided that there was no liability to redeem certificates at their face value. It further provided that the Corporation and the Trust Fund should not be obligated in respect to the certificates except as expressly provided in the indenture. It empowered the Corporation to declare the existence of emergencies and to suspend the redemption of certificates during such emergencies. And it further empowered the Corporation to charge and receive commissions, expenses, and compensation for services, but withheld the right to compensation for managing the fund until the annual returns were paid to the investors. While each investor was required to sign a purchase agreement in which it was stated among other things that by accepting the certificate the investor became a party to the trust indenture, there is no indication in the record that investors were furnished copies of the instrument, or were familiar even in a general way with its provisions, or had any information respecting its restrictive provisions. Instead, it is a fair inference from the record as a whole that investors were unfamiliar with the terms and provisions of the indenture. At least five series of certificates were issued, denominated series A, E, F, G, and O, respectively. In the certificates, the distribution of returns to the holder was referred to as dividends; and the right of the holder upon redemption was referred to as his distributive share of the assets of the Trust Fund. On their face, the F and G certificates were denominated investment trust certificates; and throughout they were called certificate or certificates. The series O certificates were labeled on the outside "Certificate-Bond". Near the top of the face of the certificates appeared "No. Shares————". And at a nearby position appeared "Face Value Dollars $————". The hyphenated word "certificate-bond" appeared twenty-four times in the face and on the reverse side of the certificates. The singled word "bond" appeared twice. And the word "bondholders" appeared once. By and large, the certificates in series A were similar except in respect to rate of return. The series O certificates provided that no past, present or future stockholder, member, officer, or director of the Corporation should be personally liable under "this Certificate-Bond or under the Indenture". But such provision of immunity from personal liability did not expressly include the Corporation itself.

It was the general practice in the selling of the certificates to tell investors that they were lending money; that they were receiving bonds with a fixed rate of return; and that after three years from issuance of the bonds, the investors could cash them at their face value. And until shortly before the intervention of receivership proceedings in the state court, annual payments were regularly made to investors. The Corporation considered and treated such payments as interest. The payments were at the rate of six per cent per annum; and they were consistently made without regard to fluctuations in earnings or losses. Some of them were made out of capital, not earnings. And all certificates which had been outstanding for more than three years were redeemed in cash at their face value if demand therefor was made by the holder without valuation or determination of the distributive share of such holder in the trust fund. Shortly before the initiation of receivership proceedings in the state court, the Corporation failed for the first time to make the usual annual payment to holders of certificates representing a return of six per cent upon the face value of the certificates; it also declared an emergency and discontinued the redeeming of certificates until a reorganization could be effectuated; and that precipitated legal proceedings.

■ Section 106(1) of Chapter X, supra, 11 U.S.C.A. § 506(1), defines

"claims" to include all claims of whatever character against a debtor or its property, except stock, whether or not provable under section 63, and whether secured or unsecured, liquidated or unliquidated, fixed or contingent; section 106(4), 11 U.S.C.A. § 506(4), defines "creditor" to mean the holder of any claim; and section 106(6), 11 U.S.C.A. § 506(6), defines "debts" to include all claims. The provisions of the trust indenture; the appearance, contents, and provisions of the certificates; the practices, procedures, statements, and representations made to investors in connection with the sale of certificates; the payment of annual returns, which the Corporation and the Trust Fund considered and treated as interest, without regard to fluctuations in earnings or losses, and without regard to whether made out of earnings or capital; and the consistent redeeming of certificates at their face value without valuation or determination of the distributive share of the holder thereof in the Trust Fund, all co-acting and combined, had the effect of creating the relationship of debtor and creditor between the Corporation and the Trust Fund on one hand, and the holders of certificates on the other hand, rather than that of the holder of certificates merely owning interests in or shares of the assets of the Trust Fund. Since the relationship existing between the parties was that of debtor and creditor, the holders of certificates had claims of personal liability at the face value of the certificates against the Corporation and the Trust Fund which were recognizable in the proceeding for reorganization. And recognizing such claims in that manner, the Corporation and the Trust Fund were insolvent and unable to pay their debts as they matured.

■ The sufficiency of the petition for reorganization is challenged upon the ground that it failed to allege that the Corporation and the Trust Fund were insolvent or unable to pay their debts as they matured. Section 127 of Chapter X, 11 U.S.C.A. § 527, provides that a petition for reorganization may be filed in a pending bankruptcy proceeding, either before or after the adjudication of the Corporation. And Section 130(1), 11 U.S.C.A. § 530(1), provides that every petition for reorganization shall state that the corporation is insolvent or unable to pay its debts as they mature. The petition in this case did not state in specific language that the Corporation and the Trust Fund were insolvent or unable to pay their debts as they matured. And it was not filed in the bankruptcy proceeding. It took a different number on the docket of the court. But in the petition direct reference was made to the pending proceeding in bankruptcy. That proceeding was identified by number and style. And it was stated in the petition for reorganization that the court had determined in the bankruptcy proceeding that the relation of debtor and creditor existed between the Trust Fund and the holders of certificates. It was further stated that outstanding certificates evidencing interests in or claims against the Trust Fund aggregated $39,038,139.91; and that the book value of the assets of the Trust Fund as determined by an audit of the accounting firm of Ernst & Ernst totaled in amount $28,848,791.13. And a copy of the balance sheet compiled and prepared by the auditors was attached to the petition and made a part of it. Such balance sheet disclosed assets and liabilities in the amounts stated, respectively. It was further stated in the petition that owners of certificates were entitled to have their certificates redeemed at any time after three years from issuance upon the basis of their proportionate part of the trust fund, either in cash or in kind; that due to the multitype and varied classes of investments of the Trust Fund, it was impossible to make division in kind; that it was impossible without liquidating the Trust Fund to pay each certificate holder his proportionate part thereof; and that to liquidate the assets of the Trust Fund would cause great loss and irreparable damage. Although the petition failed to state in categorical terms that the Corporation and the Trust Fund were in-

924

solvent or unable to pay their debts as they matured, the fact clearly appeared from the face of the pleading, the involuntary petition in bankruptcy, the report of the audit, and the balance sheet, all of which were specifically referred to in the petition for reorganization. Therefore the petition was not fatally defective for failing to comply with the requirements of section 130(1), supra. Neither was it fatally infirm in other respects.

■ Error is predicated upon the declination of the court to conduct a hearing upon the issues tendered by the O'Bryans and the Harts in their respective pleadings. In such pleadings, the action of the court in entering its order of adjudication in bankruptcy and in entering its order approving the petition for reorganization under Chapter X was challenged upon the ground that the Corporation and the Trust Fund were separate legal entities; that the relationship of debtor and creditor did not exist between the Corporation and the Trust Fund on one hand, and the holders of certificates on the other hand; and that the Corporation and the Trust Fund were not insolvent or unable to pay their just debts as they matured. Section 144 of Chapter X, 11 U.S.C.A. § 544 provides in substance that if a creditor, indenture trustee, or stockholders shall file an answer controverting any of the material allegations contained in the petition, the judge shall determine the issues presented, and enter an order approving the petition if satisfied that it complies with the requirements of the chapter, that it was filed in good faith, and that the material allegations are sustained by the proofs, or dismiss it if not so satisfied. The court should have given the O'Bryans and the Harts an opportunity to adduce evidence in support of the issues of fact tendered in their pleadings. But the issues of fact tendered by these parties had been injected into the proceeding by others at an earlier juncture. Evidence had been adduced relating to such issues and they had been determined. Any additional evidence which the O'Bryans and

the Harts might have presented would have been merely cumulative and repetitive with no persuasive indication that the action of the court in determining such issues would have been different in the end. The declination to hear further evidence did not prejudice the O'Bryans and the Harts in their effort to overturn the action of the court in entering the order of adjudication in bankruptcy and in entering the order approving the petition for reorganization; and to vacate such action of the court and remand the proceeding for the idle purpose of enabling such parties to adduce cumulative or repetitive evidence would merely prolong the complicated litigation without resulting change in the ultimate outcome.

The orders from which the appeals were taken, respectively, are severally

Affirmed.