**RAINBO GOLD MINES, a Delaware corporation, Louis C. Deluke and Lucy Deluke, Appellants,**

v.

**Matilda C. MAGNUS, Appellee.**

**No. 8258.**

United States Court of Appeals
Tenth Circuit.

Dec. 20, 1966.

John G. Marshall and Raymond W. Gee, Salt Lake City, Utah (Tuft & Marshall, Salt Lake City, Utah, were on the brief), for appellants.

Clifford L. Ashton, Salt Lake City, Utah (Olsen & Chamberlain, Richfield, Utah, and Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, were on the brief), for appellee.

Before MURRAH, Chief Judge, SETH, Circuit Judge, and DOYLE, District Judge.

DOYLE, District Judge.

Appellants seek reversal of a judgment obtained by the appellee, Matilda C. Magnus, against each of them, in the total amount of $275,500.00.

The appellant Rainbo Gold Mines is a Delaware corporation which was the owner and operator of mining properties near Marysvale, in Utah. Appellants Louis C. and Lucy Deluke, were at all times the President and Secretary respectively of the Rainbo Company.

The action herein was commenced as a fraud case, the plaintiff-appellee having alleged that the sum of $275,000.00 had been obtained from her by fraud. The complaint alleged that during the period from September, 1960 to May, 1963, plaintiff advanced the mentioned sum and did so as the result of representations by individual defendants (appellants). The advances were for the purpose, according to a further allegation, of developing certain mining claims and others appropriately described as within the Rainbo group. The alleged fraudulent representations were that within six months after the advances plaintiff would begin to receive a return on her investment as a result of production of ores and minerals. At the time of the representations the defendants knew that the statements made were false. It is further alleged that the monies were misapplied and were not used for the purpose for which they were advanced.

This case was not tried on its merits; instead, a settlement agreement was reached while pretrial depositions were being taken. The depositions of the parties were interrupted and a stipulation was read to the reporter. This

stated in substance that in the action in which a partial deposition of Louis C. Deluke was taken: "We want to offer a stipulation for the record which is to be a basis for a continuance of these depositions." Counsel for defendant then stated for the record that the terms of the stipulation were that the defendants agreed to confess "and do hereby confess judgment in the amount of $275,000.00." The stipulation went on to provide that the enforcement of the judgment would be postponed for one year and in consideration of this postponement each of the defendants agreed to provide the plaintiff with a lien securing the judgment consisting of all of the property and assets of the Rainbo Gold Mines corporation.[1]

Documents were exchanged in an effort to carry out the stipulation. These described the properties which were to be transferred for the purpose of furnishing the security for which provision had been made. The question arose immediately as to whether a certain group of claims, called the "Greenhorn Group" or "Greenhorn Claims," were to be included in the stipulation. The appellants took the position that inasmuch as the Rainbo Company did not have the title to these Greenhorn claims they were not included. The so-called Greenhorn claims were shown at the trial to be contiguous to the claims which are admittedly owned by the Rainbo Company, and indeed the tunnel which serves the other Rainbo claims runs through the Greenhorn claims. It would also appear, judging from the controversy which centers around the Greenhorn claims, that these have much more value than any other part of the property.

Before the trial the court determined that the stipulation was ambiguous and that it was therefore necessary to ascertain the intention of the parties from the background information and the surrounding circumstances.

In the pretrial order the main issue was described as whether the Greenhorn claims were a part of the mining property and assets of Rainbo Gold Mines corporation. Other issues set forth in the pretrial order were: whether any individuals were claiming the mining properties or holding them in trust; whether or not they obtained them without consideration; whether or not they were obtained from the corporation in violation of some fiduciary duty; whether or not the claims were represented by defendants to be a part of the Rainbo properties when monies were received from plaintiff (appellee) by defendants (appellants) for work on the Rainbo mining claims.

There was no dispute as to the express terms of the stipulation or as to whether it had been agreed upon. There was an issue of duress at the trial but this is not urged here. The trial was thus limited to construction of the stipulation

1. The pertinent part of the stipulation is as follows:

"Mr. Burns, if I may state for the record what our stipulation is in terms of what I understand our agreement to be, I will state that the Defendants, and each of them, in C–141–63 agree at the present time to confess and do hereby confess judgment. However, the judgment is not to be entered or given effect until the expiration of one year from date. The judgment will be in the amount of $275,-000.00 which plaintiff agrees to accept as a total judgment in this action, inclusive of costs, for any claims and interest or for any amounts in excess of $275,000.00 or any amounts which the depositions may disclose but not in excess of that amount.

"In consideration of plaintiff's agreement to protract the entry and enforceability of the judgment hereby confessed for the period of one year from date hereof, the Defendants, and each of them agree to provide the Plaintiff with the following security:

"(A) A lien in such form as will satisfactorily secure the amount of the confessed judgment with all of the mining properties and assets of Rainbo Gold Mines Corporation, a Delaware Corporation, to be in such form and content as will make it eligible for recording in the Office of the Piute County Recorder and will give sufficient public notice as to secure Plaintiff's right under the instrument."

in the light of the surrounding facts and circumstances.

Following trial of the mentioned issue the court made detailed and elaborate findings and conclusions. We have carefully examined these and are of the opinion that the findings are adequately supported by the evidence and that the conclusions are in accordance with law.

The trial court determined that:[2]

Since 1952 and continuing to date, the defendants Louis C. Deluke and Lucy Deluke have exercised complete and exclusive control over the affairs of Rainbo Gold Mines Corporation. They treated the corporation as their own, exercising complete control of the assets of the corporation and determining the manner of its operation. They did all of this with the acquiescence of the other stockholders and directors. As a result of representations that money obtained was to be used and was being used for corporate purposes, Louis Deluke obtained some one-half million dollars as investments in the corporation. He was allowed to disperse and dispose of that money according to his own wishes. He filed lawsuits, settled the suits, dismissed cases with prejudice and disposed of corporate property without limitation or supervision.

The shareholders and directors of the corporation, other than the Delukes, had nothing to do with its operation or with the mentioned litigation. Louis Deluke filed several suits which specifically alleged that the Greenhorn claims were the property of Rainbo Gold Mines. As a result of these lawsuits, he succeeded in obtaining a conveyance of the entire Greenhorn claims for the sum of $5,000.-00. This sum was part of a larger amount which he had obtained from Plaintiff (appellee). Deluke represented to her that he needed a total of $60,000.00 in order to settle the actions and obtain the claims. Appellee paid him this sum for the specific purpose. He gave no accounting for the $55,000.00 which he did not use.

Louis Deluke took title to the Greenhorn claims in his own name. Instead of conveying them to Rainbo Gold Mines, he conveyed them to his niece Lucy. He had represented to plaintiff (appellee) that Rainbo Gold Mines was the owner of the claims and the latter justifiably believed this representation.

"The Greenhorn mining claims are situated wholly within, and are isolated by other mining claims and patented lands which are in the unquestioned ownership of Rainbo Gold Mines; that the Greenhorn mining claims have been represented and operated as an integral part of the mining operation of Rainbo Gold Mines properties."

" * * * the fair and reasonable meaning of said stipulation was and is in view of all of the background circumstances in evidence that the Greenhorn mining claims were to be considered a part of the property of Rainbo Gold Mines Corporation for purposes of the stipulation and were to be a part of the security of the plaintiff provided for in the stipulation of January 22, 1964, that this understanding and intent were natural and justified on the part of plaintiff and that any secret or undisclosed intent to the contrary on the part of the defendants or any of them would be incongruous with the agreement and its true circumstances, in continued furtherance of self interest in violation of fiduciary duty toward the corporation having residual liability and in breach of principles of fair dealing toward the plaintiff."

Further holdings of the Court were that:

The stipulation was a valid and binding agreement; it was intended by the parties to include not only those claims which stood in the name of Rainbo Gold Mines Corporation but also the so-called Greenhorn claims; the plaintiff was entitled to judgment requiring the defendants to execute for and on behalf of Rainbo Gold Mines Corporation and on behalf of each of the defendants, such

---

2. In the interest of space we summarize the statements of the court.

security instruments as were exchanged (soon after the stipulation was entered into) between counsel for plaintiff and counsel for the defendants, said agreement and mesne documents to include the property therein described,[3] but also expressly to include the Greenhorn mining claims.

An amended judgment specifically described the several claims and ordered and directed that the plaintiff-appellee's lien cover, include and affect the "hereinabove described patented mining claims and also the following: (The court went on to describe those which the corporation had held in fee).

Various additional orders implementing the original and the amended judgment were entered, including one providing for sale of the claims to satisfy the plaintiff-appellee's judgment.

Still further conclusions were that:

The individual defendants (appellants) were fiduciaries for the corporation and thus received title to the Greenhorn claims as constructive trustees;

The defendants so preempted the corporate affairs of Rainbo Gold Mines as to require that the corporate fiction be disregarded;

The mining property of Rainbo Gold Mines included the Greenhorn Group; Lucy Deluke took the conveyance from Louis Deluke with full knowledge and notice of the circumstances under which they had been obtained and without paying any valuable or independent consideration for them.

The points urged by the appellants are: *first,* that the trial court erred in finding that the Greenhorn group of mining claims were included in the property and assets of Rainbo Gold Mines, and were therefore subject to plaintiff's lien; *secondly,* that the court erred in finding that the lien of plaintiff covered, included, or affected certain other mining claims and real property, without sufficient evidence to show that said property was included in the property and assets of Rainbo Gold Mines Corporation; *third,* that the court erred in finding that defendant Louis Deluke had authority to confess judgment on behalf of Rainbo Gold Mines and enter into agreements of compromise encumbering the assets of Rainbo Gold Mines, without being authorized to take these actions by the directors of the corporation.

### I.

In support of their contention that the trial court erred in finding and concluding that the Greenhorn claims were included in the property and assets of Rainbo Gold Mines, and were subject to plaintiff's lien under the stipulation, the appellants rely on the fact that the legal title to the Greenhorn claims was not in the Rainbo Gold Mines Corporation at the time of the stipulation, but rather, was held by Lucy Deluke, having been conveyed to her from her uncle who had in turn obtained title from the Deertrail Mine and others growing out of the state court litigation.

It is further argued that there is a lack of evidence to justify the finding (or conclusion) that appellants are estopped in view of the representations made, to assert that the title is properly in Lucy Deluke. It is said that there is no evidence in the record that Lucy Deluke made any such representation to the plaintiff.[4]

Somewhat the same contention is advanced in connection with the conclusion that Louis Deluke and Lucy Deluke were fiduciaries for the Rainbo Gold Mines and owed an obligation to that company as constructive trustees to convey the Greenhorn claims to the Rainbo Gold Mines.

These arguments are transparent and superficial. They ignore the realities including the substantial legal identity of Rainbo, Louis Deluke and Lucy Deluke. Appellants also refuse to recognize that the Rainbo Gold Mines was

---

3. (in the exchanged documents)

4. A short answer to this is that Lucy Deluke was shown to have been a close and willing collaborator of her Uncle Louis.

equitably entitled to the money that was invested in the Rainbo mine. This money did not reach the Rainbo treasury. Instead it was spent, according to the evidence, by Louis Deluke, indiscriminately, for personal as well as corporate purposes. The disputed claims were unquestionably purchased with money which had been advanced for the use of Rainbo Gold Mines.

The court in essence held that it was the realities rather than the formalities which governed; that neither the neglect of appellants to pay the money to Rainbo nor their failure to vest Rainbo Gold Mines with title could have any legal consequence; that all defendants were responsible for all of the property regardless of the state of the title. The conclusions reached were fully justified both as a matter of fact and of law.

■ We have examined all the testimony and the findings and conclusions of the court and are of the opinion that the evidence is amply sufficient to support the determination of the trial judge that these claims were within the stipulation agreed upon by the parties.

## II.

■ It is next urged that the court erroneously included in its amended judgment a certain 160-acre farm which was the property of Lucy Deluke and was not the property of the Rainbo Gold Mines company. It is said that this farm property was not the subject of any testimony at the trial. This was because the appellants did not raise it. The only issue at the trial was whether the Greenhorn claims were part of the stipulation which the parties entered into at the time of the settlement of the case. On that occasion certain implementing documents were exchanged by the parties in an effort to carry out the stipulation. These documents described the property of the Rainbo company and included a description of the 160 acres which are here the subject of controversy. All of the claims that were held by the Rainbo Gold Mines company and the other property which at the time of the stipulation was represented to be property of the Rainbo Gold Mines company was excluded from consideration at the trial. The effect of the judgment was to enforce the stipulation and to include within its ambit the Greenhorn claims. Therefore, the fact that there was no specific testimony concerning the 160 acres of land can not now be the basis for objection. The exchanged documents were before the court as a part of the stipulation and their contents were properly included in the amended judgment.

## III.

The final contention is that Louis and Lucy Deluke did not have authority to bind Rainbo Gold Mines to a judgment or a confession of judgment.

■ Ordinarily the officers of a corporation do not have any such general authority. Here, however, the Delukes were majority shareholders and at all times acted with the complete approval and consent of the remaining shareholders and directors. Under circumstances such as have been described, and in order to prevent fraud and injustice, it is proper to disregard the corporation as a legal entity distinct from its members. In the case of Fitzgerald v. Central Bank and Trust Company, 10 Cir. 1958, 257 F.2d 118, this Court, speaking through Chief Judge Bratton, said:

" * * * It is the well established general rule that ordinarily a corporation is regarded as a legal entity separate and distinct from its members. But the fiction of separate existence may be disregarded and the acts of the members treated as acts of the corporation where circumstances warrant it. The conditions under which the corporate entity may be disregarded, or the corporation treated as the alter ego of its members, necessarily vary according to the circumstances in each case. But it may be said in general terms that the doctrine is an equitable one appropriate for application to prevent fraud, injustice, or wrong. Henry v. Dolley, 10 Cir., 99 F.2d 94; Fish v. East, 10 Cir.,

114 F.2d 177; Warner Bros. Theatres v. Cooper Foundation, 10 Cir., 189 F.2d 825."

To the same effect is Shamrock Oil and Gas Co. v. J. E. Ethridge, et al., D. Colo. 1958, 159 F.Supp. 693.

The cases on the doctrine allowing penetration of corporate fiction are noted in 1 Fletcher Cyclopedia of Corporations, (permanent edition) Section 41. See particularly the discussion at pages 166 to 187 of the cited volume. This case satisfies all of the required standards. Therefore, it was not error for the trial judge to invoke this alter ego doctrine.

The judgment is affirmed.