ACME CARD SYSTEM CO. v. REMINGTON RAND BUSINESS SERVICE, Inc., et al.

No. 1785.

District Court, D. Maryland.

Jan. 7, 1938.

Bartlett, Poe & Claggett (J. Kemp Bartlett), of Baltimore, Md., and Blum & Jacobson (Henry S. Blum), of Chicago, Ill., for plaintiff.

Emory, Beeuwkes, Skeen & Oppenheimer (John H. Skeen), of Baltimore, Md., and Bean, Brooks, Buckley & Bean (Barton A. Bean, Jr.), of Rochester, N. Y., for defendants.

WILLIAM C. COLEMAN, District Judge.

This is a patent infringement suit, and the questions which are the subject of this opinion arise on exceptions to a report by the special master. Since the litigation leading up to this report has been protracted and involved, the following chronology is deemed necessary:

On March 20, 1933, this court, pursuant to its written opinion filed in this proceeding, 3 F.Supp. 254, entered its original decree to the effect that the sole defendant then before this court, Remington Rand Business Service, Inc., a Delaware corporation (hereinafter referred to as the "Service Company"), had a regular and established place of business within the Maryland District and had there infringed the three patents which were the subject of suit, this court also decreeing all three patents valid. From this decree an appeal was taken to the Circuit Court of Appeals, which resulted on June 11, 1934, in an affirmance of the decree with respect to one of the patents, Powell No. 1,594,112, but a reversal with respect to the other two patents, the appellate court finding one of them (Powell No. 6,183,207) invalid for double patenting, and the other (Soans' No. 1,394,231) invalid for lack of invention. See 4 Cir., 71 F.2d 628.

On March 7, 1935, before a decree on mandate of the appellate court had been entered, the plaintiff, by leave of this court, filed a supplemental bill. Very briefly stated, the gist of this bill is that Remington Rand, Inc., a Delaware corporation, hereinafter called the Delaware Company, is, in fact, the real infringer; that both the Service Company and another company incorporated in Maryland known as Remington Rand, Inc., and hereinafter called the Maryland Company, had been incorporated and employed by the Delaware Company as its wholly owned subsidiaries to conceal fraudulently the true nature of the latter's activities; that neither the Service Company nor the Maryland Company has assets sufficient to satisfy a decree for damages in the present proceeding growing out of the infringement, and, therefore, the supplemental bill prayed that the Delaware Company and the Maryland Company be made parties defendant; that they be required to answer; that the original decree of this court, as modified by the mandate of the appellate court, be made obligatory upon them also; and that they be held accountable for such profits and damages as may be found due the plaintiff as a result of the infringement. On March 30, 1935, the Delaware Company, appearing specially for the purpose, moved to quash the service upon it of the subpœna under this supplemental bill, and to dismiss the same on the ground that it had committed no acts of infringement within the Maryland District. The Maryland Company likewise appearing specially, moved for dismissal of the supplemental bill on the ground that service upon it was invalid because it had been dissolved pursuant to law on November 3, 1934, and that thereby the agency of the company upon whom service had been had was terminated. These motions were heard in due course, and on May 14, 1935, this court entered an order overruling them, and requiring both the Delaware Company and the Maryland Company to answer the supplemental bill of complaint. Answers were duly filed.

On June 14, 1935, this court entered its decree on the mandate of the appellate court by which the validity of Powell patent No. 1,594,112, and its infringement within the Maryland District by the Service Company was established; that company was enjoined from further infringement, and directed to pay to the plaintiff such profits received by it and such damage suffered by the plaintiff by reason of the infringement as might be determined by a special master, to whom these matters were referred; and the reference to the special master directed him to hear testimony, determine and report whether or not the prayers for relief in the plaintiff's supplemental bill should be granted against the Delaware Company and the Maryland Company, or either of them; and whether this court's decree, and any other decrees hereafter entered in this proceeding, should be made binding upon the Delaware Company and the Maryland Company, or either of them, with the same force and effect as upon the original defendant, the Service Company.

Thereafter on May 25, 1937, and before the special master had concluded his hearings, the plaintiff filed a petition alleging that during the pendency of these proceedings, and in spite of the previous decrees of this court, the Delaware Company was continuing to infringe Powell patent, No. 1,594,112, and prayed that its officers, etc., be adjudged in contempt, or in the alternative, that the decree of June 14, 1935, be extended by enjoining and restraining the Delaware Company from infringing this patent. On June 19, 1937, a joint answer was filed on behalf of the three defendants to plaintiff's petition, reserving all objections previously made by them to the jurisdiction of this court; denying that the Delaware Company had, since this court's decree of June 14, 1935, infringed plaintiff's patent; alleging that to extend this court's injunction contained in that decree so as to apply to the Delaware Company and the Maryland Company would be premature, since the special master has not yet acted; and that since no writ of injunction has been entered or served upon the Delaware Company or any of its officers, there is no basis for the entry of an order of contempt. Finally, as a result of this petition of the plaintiff and the joint answer of the three defendants, this court, on June 23, 1937, entered a decree supplementary to its decree on mandate of June 14, 1935, providing for an additional reference to the special master by directing that he shall take testimony, determine and report whether the relief sought by the plaintiff in this last petition should be granted against the defendants, or any of them.

It thus appears that the special master, in addition to determining the amount of profits and damages as a result of the infringement, has been called upon to determine various preliminary issues. These issues are embodied in a preliminary report of the special master and may be summarized in the following questions: (1) Has this court jurisdiction over the Delaware Company, and if so, should there be granted the relief prayed in plaintiff's supplemental bill; (2) does the dissolution of the Maryland Company preclude granting any relief against it at this time; and (3) has there been infringement by the Delaware Company since this court's decree?

The bare jurisdictional points involved in the first two of the above questions were determined in favor of the plaintiff by this court's order of May 14, 1935, already referred to, following the hearing on the motions to quash service upon both the Delaware Company and the Maryland Company. The special master, however, is correct in his understanding, as set forth in his report, that this court expected him, in determining whether or not the relief prayed in the plaintiff's supplemental bill should be granted, to consider and pass upon all issues of fact and law involved in that determination, including, in the case of the Delaware Company, those relating to the jurisdiction of this court, and, in the case of the Maryland Company, whether such company is subject to suit, because these questions have never been finally determined by this court.

The special master has divided his preliminary report into two parts, the first part containing his findings of fact and conclusions of law with respect to the first and second questions above stated; and the second part containing his findings of fact and conclusions of law with respect to the remaining question.

Considering these questions in the same order in which the special master has treated them, it appears that the special master's conclusions are that both the first and second question must be answered in the affirmative, and to the first conclusion the Delaware Company has filed exceptions.

■ With the special master's conclusions we agree. He took a great amount of testimony; his conduct of the hearings was most thorough and efficient; his report contains an admirable, correct summary of the complicated facts developed by the testimony; his conclusions of law based upon such facts appear to this court to be correct and, therefore, should be affirmed.

■ First with respect to this court's jurisdiction over the Delaware Company, since it is not a Maryland corporation, it is suable in this jurisdiction only if it has a regular and established place of business in the district, *and* has infringed the plaintiff's patent therein. 28 U.S.C.A. § 109. It is admitted that the first of these two conditions exists, namely, that the Delaware Company did have a regular and established place of business in the Maryland District at the time of the filing of the supplemental bill. This also appears to be true from the return of the marshal on the second service of the company. The special

master found that the Delaware Company completely controlled the Service Company and the Maryland Company. He found that the Delaware Company created these subsidiaries as its agencies for the sale of its products in order to diminish its liability for franchise or capital stock taxes in certain states; that the Service Company was abandoned in October, 1931 (not dissolved), as a selling vehicle, because the Delaware Company thought it desirable that its sales subsidiary should have a different name; that in order to accomplish the desired change of name, it was, therefore, necessary to create a new corporation in some state other than Delaware, for the purpose of continuing for the Delaware Company the business of the Service Company; that the Maryland Company was incorporated in 1931 for this purpose and took over the business formerly conducted by the Service Company in all states other than those in which the Delaware Company was doing, or became qualified to do business in its own name; that when, as a result of changes in the tax laws, state and federal, the advantages to the Delaware Company of conducting its sales business through a subsidiary had disappeared, the Maryland Company was liquidated and dissolved (in November, 1934); that the Delaware Company furnished each of the subsidiaries with the capital necessary to conduct its business; and that a small part of their original capital ($5,000) was represented in each case by stock subscribed for and held by the Delaware Company, this being the entire amount of such stock with the exception of qualifying shares. The remainder and by far the greater capital of the subsidiaries was obtained by them from or through the Delaware Company without the necessity of cash outlay. The total obligation of the subsidiaries for the property so acquired from the Delaware Company was represented by a "capital liability," to the Delaware Company.

It was further found by the special master that the operation of these subsidiaries was directed by the Delaware Company in all important particulars; that their principal executive officers were, with minor exceptions, the same persons who acted as the principal executive officers of the Delaware Company, and the salaries of these men were paid entirely by the Delaware Company. The directors of these subsidiaries were all directors of the Delaware Company. The latter handled all advertising on behalf of the subsidiaries, and furnished all financial statements to commercial agencies in the form of consolidated statements in which separate accounts of the subsidiaries did not appear. The entire accounting for sales and otherwise was handled as a unit by employees of the Delaware Company and those of the subsidiaries, though the subsidiaries paid the salaries of some of the subordinate officers and clerks and were charged with the pro rata part of the salaries of other employees in the accounting department, and the subsidiaries were also charged a pro rata part of rent and miscellaneous head-office expenses of the Delaware Company. The accounts and sales, as between the Delaware Company and the subsidiaries, were handled in the same manner as its accounts with the Delaware Company's branch offices.

While, with possible minor exceptions, the corporate records, books, and accounts of the Delaware and the Maryland Companies were kept separately and their separate corporate existence to this extent carefully maintained, it is obvious, as the special master concluded, that these subsidiaries would not have been able to carry on their businesses but for the fact that they received the favorable treatment that they did from the Delaware Company. As the special master found, the organization and abandonment of these subsidiaries, the maintenance of their separate corporate books and records, and possibly also of their separate accounts, involved additional expense, but, apart from this, the method of conducting the selling of the Delaware Company's products and the policy and the work incident thereto, were not in any material respect different from what they would have been if the subsidiaries had not been formed, and the Delaware Company had sold its products through one of its own departments.

The special master further found that the assets of neither the Service Company nor the Maryland Company were transferred to the Delaware Company with the intent to injure the present plaintiff, in spite of the fact that the original substitution of the Maryland Company for the Service Company took place about the time (1931) when this court denied the motion of the Service Company to dismiss the proceeding for lack of jurisdiction; and that the dissolution of the Maryland Company and transfer of its assets to the Delaware Company occurred (in November, 1934) only a few months after the

Circuit Court of Appeals had sustained, with the modifications hereinbefore referred to, this court's decree against the Service Company. The special master accepted as true the testimony of the present attorney and secretary of the Delaware Company to the effect that these corporate changes had no intended relation to the pendency of the present case, but were made for business and tax reasons—testimony which found support in the fact that a number of other subsidiaries of the Delaware Company were abandoned or dissolved at or about the same time.

While not completely convinced, as was the special master, that there was no ulterior motive behind these corporate changes, the point becomes relatively unimportant, since the special master has found from the other facts which we have just epitomized, and we concur, that the transfer of all the assets of the Service Company to the Maryland Company and the Delaware Company, and the subsequent transfer of all of the assets of the Maryland Company to the Delaware Company, were in fraud of creditors, under statute 13 Elizabeth c. 5 and the Uniform Fraudulent Conveyance Act, in effect in Maryland, Code, art. 39B, and that the plaintiff has the right to proceed against the Delaware Company for the enforcement of the remedies afforded in such a case. He found that both the Service Company and the Maryland Company were insolvent after the transfer of all their property; that the satisfaction of the claims which the Delaware Company had against the two subsidiaries was not consideration, since these claims were not carried on the latter's books as "debts" but as "capital obligations"; that these obligations were analogous to stock which would be payable to the Delaware Company only upon liquidation of the subsidiaries and after payment of debts in full; that, accordingly, this did not benefit plaintiff or increase the assets of the subsidiaries available for payment of the plaintiff's demands; that the agreement to assume the liabilities of the subsidiaries did not constitute consideration unless accepted by their creditors; and that prior to the transfer each subsidiary had assets greatly in excess of its debts, while after the transfer neither had any property.

However, it is not the remedies thus given for fraudulent conveyances that the plaintiff . is here seeking, but the opportunity, because of such conveyances, to enforce against the Delaware Company whatever right it, the plaintiff, had against the Service Company and the Maryland Company, on the so-called instrumentality rule, that is, on the ground that a corporation will be held responsible for the acts of a subsidiary controlled by it in cases involving fraud, actual or constructive, or prejudice to such subsidiary's creditors. The special master sustained the present plaintiff in this contention as respects the Delaware Company's relations with the Service Company, and in this we concur. The special master reviews at length the authorities in support of his conclusion. Suffice it here, however, to refer to the recent decision of this court in Hazeltine Corporation v. General Electric Company et al., 19 F.Supp. 898, where the authorities are fully reviewed, and where the principle upon which the special master in the present case relies is adopted, although in that particular case fraud or prejudice to the plaintiff was not proved. In short in the Hazeltine Corporation Case we dealt directly with the question presented here, namely, whether infringement within the district by a wholly controlled subsidiary can be considered infringement by the parent corporation for purposes of jurisdiction, and held that it could, provided fraud upon or injustice to the plaintiff are present.

To the argument that no real injury to the plaintiff has resulted from the transfer of the assets of the Service Company and the Maryland Company, because it can enforce its cause of action by instituting a new proceeding or proceedings against the Delaware Company in another jurisdiction, suffice it to say, as did the special master, that since these transfers were fraudulent, the law gives the plaintiff the right to sue the Delaware Company in any forum where jurisdictional prerequisites are otherwise met; and such is the case here. The court having jurisdiction, it is entirely appropriate for the plaintiff to join the Delaware Company as a defendant by supplemental bill. It also necessarily follows from our conclusion with respect to jurisdiction that, while the measure or extent of possible profits and damages to which plaintiff may be entitled is a matter still to be determined by the special master, in determining same the special master is to treat the Delaware Company as though it had been a party defendant in this proceeding from its incep-. tion, and is not to be confined to any period

of time short of that as to which it would have been his duty, had such been the case, to make factual findings with respect to infringement.

The legal principle upon which jurisdiction over the Delaware Company now rests is this: The Delaware Company committed certain wrongful acts, namely, caused the discontinuance of the business of the Service Company at a certain time and the dissolution of the Maryland Company at another time, thereby destroying plaintiff's opportunity for recovery against these companies and, therefore, the Delaware Company, in legal contemplation, must now be treated as having subjected itself to liability, if not otherwise protected by defenses such as laches or limitations, with respect to the patent in suit, for (1) acts of infringement in Maryland or elsewhere by both of these subsidiaries, and (2) acts of infringement, it has itself committed in Maryland or elsewhere. This being true, there is no merit in the argument that the supersedeas bond given by the Service Company in the present proceeding in the amount of $75,000 should be treated as adequate and, therefore, as in substitution of any possible right of recovery to which the plaintiff might be entitled against the Delaware Company, had such bond not been given, or had it been merely nominal or of a less substantial amount. The relation which the amount of the bond may bear to the probable or possible amount of ultimate recovery is immaterial. We are not now permitted to speculate as to the extent of the infringement. The bond is not the Delaware Company's obligation. It cannot evade its responsibility by pointing to the fact that the plaintiff may otherwise be amply secured.

If jurisdiction of this court over the Delaware Company means anything, it means that such jurisdiction must be treated as full and complete, otherwise the equitable theory upon which it is founded would become a contradiction, and would, furthermore, tend to multiplicity of suits. Since, by reason of its wrongful acts, the Delaware Company is to be treated as but the instrument, the alter ego, of its subsidiaries that have infringed in Maryland, their acts of infringement become in legal contemplation acts of infringement of the Delaware Company. Thus, the jurisdictional requirements of the statute are fulfilled, and being fulfilled, this court is competent, in the one

proceeding, to inquire into, and to determine, through its special master, the entire extent of the infringement by the Delaware Company, as well as by the subsidiary companies. This is entirely consistent with the provisions of the patent statute, from which this court derives its power to assess damages and profits for infringement. See 35 U.S.C.A. § 70.

Turning now to the second question which, as we have previously indicated, the special master has concluded must also be answered in the affirmative and in which we concur, namely, does the dissolution of the Maryland Company preclude granting any relief against it at this time suffice it to say that, as the special master points out, section 96 of article 23 of the Maryland Code is conclusive of this point. That enactment makes no provision for suits against a corporation after dissolution. It reads as follows: "The dissolution of a corporation shall not relieve its stockholders or directors or other officers from any obligations and liabilities imposed on them by law; nor shall it abate any pending suit or proceeding by or against the corporation, and all such suits may be continued with such change of parties, if any, as the court in which the same are pending shall direct. No receiver shall institute suit except by order of the court appointing him; and such suit may be brought in his own name as receiver or (notwithstanding its dissolution) in the name of the corporation, to his use." It will thus be seen that it provides specifically that pending suits shall not abate by reason of the dissolution of a corporation, but that such dissolution shall result in the *substitution* of the corporation's stockholders, directors, or other officers as the responsible parties, thus indicating that the omission to provide for suits against a dissolved corporation was deliberate. For the purposes of the present case, the status of the dissolved corporation is, therefore, the same as that of a dissolved corporation at common law, namely, just as though it no longer exists. Agnew v. Bank of Gettysburg, 2 Har. & G., Md., 478; Chesapeake & O. Canal Co. v. Baltimore & O. R. Co., 4 Gill & J., Md., 1.

Our conclusion on this point, therefore, results in reversing our former action when we overruled the Maryland Company's motion to quash service upon it of the supplemental bill, on the ground that that company had been dissolved. More mature consideration of this point forces

us to this different conclusion, and, as already said, to an agreement with the special master.

We now come to the third question embraced in the special master's report, namely, has there been infringement by the Delaware Company of claims 1 and 6 of the Powell patent, No. 1,594,112, since the date of the decree of this court, sustaining the validity of those claims, and the affirmance of this ruling by the Circuit Court of Appeals for the Fourth Circuit? The special master has found that there has been no such infringement. To this finding the plaintiff has excepted.

Briefly stated, the situation which gave rise to this charge of subsequent infringement is that, when, as a result of sustaining Powell patent, No. 1,594,112, and finding that it was infringed by defendant, the officials of the Delaware Company sought to devise a substitute for it that would be satisfactory, they first resorted to using the separate index strips by adopting a strip tape binder, as had been used in the early Rand patent, No. 1,185,538, with ordinary cardboard strips and over which the Powell patent was found to have been a patentable improvement. This, however, was not found to be satisfactory because, when the sheets composed of these completely separated strips, were run through the machines and printed, the binding tapes on the back of them afforded an uneven and, therefore, an unsatisfactory surface. The experiment was tried of using additional linen tapes. This resulted in some improvement, but increased the cost. Paper tapes were then tried. But, again, the cost of gluing the separate tapes proved to be excessive, and resort was finally had to the use of one continuous piece of thick paper, so-called Kraft paper, as a binder.

The following description of the method of manufacture of this back sheet or binder, and the application of wood veneer strips to it, is essential to a complete understanding of this alleged infringing article: The back sheet or binder is first run through a machine which waxes it on one side, leaving, however, unwaxed narrow lines running lengthwise, that is, transversely to the ultimate position of the wood veneer strips. The wood veneer is then sized and dried, and subsequently the binder is glued on its back, and ledger paper is glued on its face. The product is then pressed and dried. Thereafter, it is trimmed and the individual strips are entirely cut through the facing paper and the wood. The purpose of the waxed lines on the back is to prevent the glue from sticking to all parts of the wood veneer, which would make it almost impossible to detach the strips. The result is that the strips are actually glued only to that part of the backing to which the wax is not applied, and thereby can readily be removed by stripping them from the backing.

Thus, it will be seen that this alleged infringing article of defendant's accomplishes the same result as plaintiff's patented device in the general sense that it provides index strips for use in frames or panels. However, it differs in that each one of defendant's strips is completely separated from every other one, and advantageously so, in that removal of one strip from any part of a sheet of strips does not result, as in plaintiff's device, in complete division of the sheet as such. On the contrary, all strips, except the severed one or ones, remain on the binder, and the binder remains intact. Also, there is the further difference that while both devices have paper backing, that of the plaintiff is a thin frangible sheet, glued permanently to the wood veneer, and designed to be torn at the strip edges; whereas in defendant's device, the paper is very thick, is not intended to be torn in regular lines, nor can it be. It is not permanently fastened to the strips, but only along spaced, adhesive lines so that the strips may be removed easily from it, and when all strips are removed it remains whole, as it was originally, but now ready to be discarded. That is to say, a different *means* is employed in accomplishing the desired result. Again, there is no *identity in operation*, because defendant uses the method of separating the strips by *peeling* them from a nonfrangible backing, the same as employed in the old Rand patent, with the tape strips; whereas plaintiff separates by *tearing* the strips along a line of scoring, which leaves no backing, separate and distinct from that which is attached to, and remains permanently with, the strips themselves, namely, the thin, frangible paper sheet glued to their under-side.

It is obvious from the aforegoing that defendant's article does not (1) perform or accomplish the same result; (2) by substantially the same means or instrumentality; or (3) operate in substantially the same way, as does the plaintiff's article. In order to sustain a charge of infringement, there must be substantial identity in

all of these three respects. It is too clear to require a quotation of claims 1 or 6 of the Powell patent, that neither one of them can be said to embrace the use of an extraneous binder such as the defendant's article employs. Defendant contends that these claims fail to provide for any extraneous backing which does not form part of the individual strips, and that, consequently, the claims require that the individual strips must, after separation, contain all of the paper backing, whereas the defendant's strips, after separation, have no backing on them, they being peeled off of the backing, which remains unused. In short, defendant relies upon a literal interpretation of the wording of claims 1 and 6, and particularly upon the use of the words "in continuous sheet form" which appear in both claims. Defendant contends that these words necessarily must be taken to mean that the sheet must be wholly composed of strips without extraneous backing, and that the defendant's strips cannot be said to be "in continuous sheet form," since they are not joined one to another by part of the strips themselves. With this we agree. The following quotation from the opinion of the Circuit Court of Appeals, sustaining this court's decree of validity of the Powell patent in suit, lends weight to defendant's contention (4 Cir., 71 F.2d 628, 632, 633), italics inserted: "The *continuous* sheet of strips can be placed in a typewriting machine like an ordinary sheet of paper so as to receive the record, and *can thereafter be separated by hand clearly along the scored lines.* * * *

"The Powell strips were designed to serve the same general purpose as those formerly known to the trade, but they accomplished this purpose by enabling a *completed* index strip in use to be made more easily and to serve more efficiently than had ever been done before."

It is true, in one sense, that defendant's product appropriates the gist of plaintiff's invention, which is the use of wood veneer strips in sheet form. If it accomplished this use in substantially the same way, there would unquestionably be infringement. Sanitary Refrigerator Co. v.

Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147. But as we have seen, such is not the case. Plaintiff contends that, even assuming defendant's contention is sound with respect to claim 1 of plaintiff's patent, such is not true with respect to claim 6, because this claim is broader than claim 1 and was accepted by the Patent Office without objection, notwithstanding and subsequent to, its prior objections to claim 1, and the changes made therein by the plaintiff to meet such objections. However, claim 6 contains exactly the same restrictions embraced in claim 1, except it provides for strips wholly separated so far as the facing paper and wood veneer are concerned. Thus it is not otherwise broader than claim 1. Neither of them expressly or impliedly can be said to contemplate an extraneous backing. What defendant has really done is to revert to the idea embodied in the earlier Rand patent, No. 1,185,538, and, indeed, to what would be in express contemplation of the wording of three of the four claims of that patent, except for the fact that although *one* or more *removable* binder strips are expressly provided for, such are described as "of adhesive-coated *textile* fabric," and cardboard is not a "textile fabric."

In view of our conclusions, it becomes unnecessary to analyze the file wrapper of the plaintiff's patent, or to determine whether the interpretation of it by the plaintiff or by the defendant is the correct one, or whether there can, in fact, be said to be any file wrapper estoppel in favor of the defendant in the present case. We place our decision squarely upon the difference between the two devices as we find them, and with full recognition of the fact that, of course, minor differences are not sufficient to avoid infringement, and that a close copy which uses the substance of an invention and performs the same office with no change in principle, constitutes infringement, although some change of form is shown. See Sanitary Refrigerator Co. v. Winters, supra.

For the aforegoing reasons the report of the special master is affirmed.