CAROLYN CHENILLES, INC., Plaintiff,

v.

OSTOW & JACOBS, INC., Ojay Mills, Inc., David Ostow and Morris Jacobs, Defendants.

United States District Court
S. D. New York.

Dec. 30, 1958.

Harry Price, New York City, for plaintiff.

Charles Sonnenreich, New York City, for defendants, Ostow & Jacobs, Inc., David Ostow and Morris Jacobs, and Ojay Mills, Inc., appearing specially for the purpose of this motion.

IRVING R. KAUFMAN, District Judge.

Defendants in this action for patent infringment and unfair competition, move pursuant to Rule 12(b), Fed.Rules Civ.Proc., 28 U.S.C.A. for the dismissal of the complaint on the grounds that venue is not properly laid in this district. The motion is denied in all respects.

The plaintiff, Carolyn Chenilles, Inc., manufactures and sells bedspreads which are distinguished by regular lines of separated tufts sewn into the material. Plaintiff asserts that this tufted fabric has come to be associated by the trade and by the public with products made by the plaintiff. The distinctive tufting is achieved through the use of special machinery, all patent rights to which are allegedly held by the plaintiff.

On February 3, 1958, the plaintiff instituted this action, charging that the defendants had made, sold and distributed bedspreads with tufting similar to that found on plaintiff's product. It is alleged that defendants' spreads are produced by a method which infringes plaintiff's patents and that, by producing and selling bedspreads with the characteristic stitching, defendants are causing their product to be confused with that of the plaintiff. This latter allegation forms the basis of plaintiff's charges of unfair competition.

On April 1, 1958, Judge Noonan denied, without prejudice, a motion similar to the one now before me. At the time, Judge Noonan felt that the papers

in the case contained too little supporting evidence to permit a proper determination of venue. At the same time, he granted the plaintiff's motion to compel an examination of the individual defendants by deposition and the production of documents, but limited this inquiry to matters relevant to the defendants' activities in this district. In the ensuing months the plaintiff examined both of the individual defendants and several exhibits were produced.

Then, on October 24, 1958, the defendants filed the motion now before me. It is their contention that the infringement action must be dismissed because one defendant, Ojay Mills, Inc. (hereinafter Ojay), is a Georgia corporation doing no business within this judicial district, and the other defendants do not make, use, or sell the accused machines here. It is further urged that the action sounding in unfair competition must be dismissed as against Ojay because it does no business here, and as against the individual defendants because they are residents of the Eastern District of New York.

Before proceeding to a discussion of the merits, I note that the proofs necessary to substantiate both causes of action against all of the defendants will undoubtedly be substantially similar. It further appears that this is the only district where all of these claims can be adjudicated at a single trial, with the resultant great saving of time and expense for the courts and the litigants.

A. Venue of Infringement Suit

(1) Ojay Mills, Inc.

I turn first to that part of the motion addressed to the infringement actions. The sole test of venue in cases of this type is 28 U.S.C. § 1400(b). Fourco Glass Co. v. Transmirra Products Corp., 1957, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed. 2d 786. This section provides:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

Plaintiff asserts, and the defendants dispute, that all of the defendants in this case have committed acts of infringement and maintain regular places of business within this district. In evaluating the arguments of both sides, I have carefully studied the transcript of defendant Jacobs' testimony and the several affidavits and exhibits submitted by the parties, with a view to clarifying the complex interrelationship of the several defendants. On the basis of this reading, it is quite clear that only in the most technical and theoretical sense can the several defendants be thought of as separate business entities. Instead, the evidence reveals a single closely knit and inseparable enterprise which makes and sells bedspreads.

At the center of this business enterprise are defendants David Ostow and Morris Jacobs. Between them, they own most of the stock of the corporate defendants and are their only officers. Jacobs and Ostow conduct their business from offices located at 22 West 32nd Street in this city [1] and from there direct the activities of Ojay, which might be called the "production department" of their enterprises and Ostow & Jacobs, Inc., which could be termed the "selling and management department."

Ojay is a Georgia corporation. It owns the mill which contains the allegedly infringing machines and concerns itself solely with the weaving and manufacture of the defendants' products. Ostensibly, it neither buys raw materials nor sells its finished products to customers. Both of these activities are carried on from the New York office where the order book for all bedspreads is kept. When goods produced by Ojay are sold by the New York office, they are often shipped to the customer directly from the

1. This office is rented in the name of Ostow & Jacobs, Inc., but the names of both of the corporate defendants are listed on the bulletin board in the lobby of the building.

mill and the recipients are billed from New York. The prices charged and the ultimate selection of designs are also the responsibility of the 32nd Street office. Even the payroll records of Ojay are kept in New York where they are maintained by the same accountant and bookkeeping staff responsible for all of defendants' records. Weekly checks are mailed from New York to cover Ojay's payroll.

In short, almost every phase of the Georgia plant's activities is controlled by the individual defendants in New York City. The closeness of this control is further illustrated by the necessity of almost daily telephone calls between the Georgia mill and the 32nd Street office. In the light of these facts, I must reject defendants' contention that the relationship between the two corporations is merely that of manufacturer to jobber. Clearly, they are part of a single business enterprise, organized and controlled by the individual defendants. It is plain that the affairs of the two corporations are completely intermingled. It would be impossible for me to dissect the daily routine of the defendants' New York office and label each transaction, each telephone call, as having been made in the name of Ojay, Ostow & Jacobs, Inc. or the individual defendants. But such a dissection is hardly necessary to my finding that Ojay has committed infringing acts in this judicial district and maintains a regular place of business at 22 West 32nd Street in this city.[2]

It is sufficient that most of Ojay's vital activities, including almost all of its contacts with the public, are handled from its New York office by the individual defendants acting as its agents and employees.

The defendants vigorously assert that the alleged infringement is limited to the use of the accused machines; that the machines are in Georgia; ergo, there has been no infringement in New York. In making this argument, the defendants have attempted to give a stultifyingly narrow interpretation to the statutory words "acts of infringement". Indeed, they would, in effect, limit the term to the actual starting, stopping and feeding of the machines.

■ I cannot agree. As I have already shown, the 32nd Street office acted as Ojay's management department, completely controlling its important activities, including the ultimate selection of the type of product to be manufactured (a choice which would undoubtedly govern the type of machine and processes to be used). If infringement there was, it was induced, planned and directed from this district by Jacobs and Ostow, Ojay's only officers. The activities in Georgia were but the mechanical carrying out of orders from New York. I find that such acts, if proven, would be sufficient to satisfy the requirement of 28 U.S.C. § 1400(b). This case is clearly distinguishable from Kryiak v. Owens Bottle Co., D.C.N.D.Ill.1928, 25 F.2d 358, and Barton v. Nevada Consol. Copper Co., D.C.S.D.N.Y.1929, 36 F.2d 85, both relied upon by the defendants. In those cases the alleged infringing acts were the local sales of unpatented products produced outside the district by the use of patented processes. I quite agree with the holdings of the two cases that a mere sale of an unpatented product within the district does not satisfy the venue statute. In this case, however, virtually *every* act necessary for the alleged infringement, except the running of the machines, appears to have been done in New York. I, therefore, conclude that at this juncture of the case the plaintiff has met its burden of showing that defendant Ojay maintains a regular place of business in the Southern District of New York and has committed allegedly infringing acts here.

2. See e. g. Urquhart v. American-La France Foamite Corp., 79 U.S.App.D.C. 219, 144 F.2d 542, certiorari denied, 1944, 323 U.S. 783, 65 S.Ct. 273, 89 L.Ed. 625; Shelton v. Schwartz, 7 Cir., 1942, 131 F.2d 805; Kerr v. Port Huron Sulphite & Paper Co., D.C.D.N.J.1957, 157 F.Supp. 685; Dolly Toy Co. v. Bancroft-Rellim Corp., D.C.S.D.N.Y. 1951, 97 F.Supp. 531.

(2) The Other Defendants.

The question of the proper venue as to the other defendants need not detain us too long. To begin with, the defendants, themselves, attribute all of the activities at the 32nd Street office to Ostow & Jacobs, Inc. Or course, as I have said, it is impossible to differentiate the separate transactions conducted at that office and assign them to one or another of the defendants. But to the extent that the designation of the type of product to be made and other acts tending to control the activities of the mill are attributable to Ostow & Jacobs, Inc., that corporation has induced the alleged infringements of plaintiff's patents in violation of 35 U.S.C. § 271(b). These violations took place in this district and thus constitute the requisite infringing act within the meaning of 28 U.S.C. § 1400(b). Since it is conceded that Ostow & Jacobs, Inc. maintains a regular place of business here, the infringement suit against that corporation was properly brought in this district.

This is also true as to the action against the individual defendants. They vigorously assert that they acted only as officers of the corporations and so cannot have committed infringing acts in their individual capacities. This argument completely ignores the real nature of the defendants' enterprise. Jacobs and Ostow are the sole moving force behind the corporations, which, it appears for all practical purposes, they own. In a very real sense they *are* the corporations and their acts resulted in the alleged infringement. Under such circumstances, corporate officers will be treated as if they, themselves, had committed the infringing acts charged and the corporate cloak will not shield the interested individuals. Marks v. Polaroid Corp., 1 Cir., 1956, 237 F.2d 428, certiorari denied 1957, 352 U.S. 1005, 77 S.Ct. 564, 1 L.Ed.2d 550; Ferguson v. Ford Motor Co., D.C.S.D.N.Y.1948, 77 F.Supp. 425. By the same reasoning, I find that the individual defendants maintain a regular place of business in this district. The corporations are so completely embodied

in Jacobs and Ostow, that in a practical sense, the business which they regularly conducted at the 32nd Street office was conducted in their personal capacities.

B. The Unfair Competition Action

I turn now to the defendants' contention that the venue of the unfair competition action against Ojay and the individual defendants is improper. This argument has little merit and in light of my foregoing discussion of the defendants' activities, may be treated briefly.

The determination of the proper venue of the unfair competition action against Ojay is governed by 28 U.S.C. § 1391(c):

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

Certainly, the extensive activities which Ojay carries on in this city constitute "doing business" within the meaning of the statute. In the case of the individual defendants, who are residents of the Eastern District of New York, the controlling statute is 28 U.S.C. § 1392(a) which provides:

"Any civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts."

In this case we have a civil action, not of a local nature, brought against the corporate defendants, who are residents of this district for venue purposes, and also against the individual defendants who are residents of another district in New York State. Thus, the quoted section sanctions the bringing of the unfair competition action against Jacobs and Ostow in this district.

Even if I had some doubt as to the proper venue of the unfair competition suit, I would nevertheless retain jurisdiction over that part of the case having found venue proper for the infringe-

ment action. The proofs in both actions will undoubtedly be substantially similar and the needs of efficient administration dictate that if possible they should be tried together. See Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Dolly Toy Co. v. Bancroft-Rellim Corp., supra; Ferguson v. Ford Motor Co., supra; see also Bradford Novelty Co. v. Manheim, D.C.S.D.N.Y.1957, 156 F.Supp. 489, 491–492.

Motion denied in all respects. So ordered.