**MINNESOTA MINING & MANUFACTURING COMPANY, a corporation of Delaware, Appellee,**

v.

**ECO CHEM, INC., a corporation of Minnesota, George G. Rynne, an individual, et al., Appellants.**

**Appeal Nos. 83–1329, 84–1378.**

United States Court of Appeals, Federal Circuit.

March 15, 1985.

---

Don W. Johnson, Dalton, Ga., argued for appellants. With him on the brief was John W. Adams, Minneapolis, Minn.

John D. Gould, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., Minneapolis, Minn., argued for appellee. With him on the brief was Norman P. Friederichs, Minneapolis, Minn.

Before DAVIS, BENNETT and NIES, Circuit Judges.

DAVIS, Circuit Judge.

This appeal discloses a continued series of efforts to avoid compliance with a default judgment of patent infringement against appellant Eco-Chem Inc. (ECI). In the court below (the United States District Court for the District of Minnesota) these attempts were unsuccessful. Nor do they prevail in this court. After fully appraising appellants' points, we hold that the district court reached the right result in rejecting those efforts at avoidance or evasion that are now before us, and therefore we affirm the decisions below.

## I.

The undisputed (or undisputable) facts are these:

Appellant Stephanie Rynne, her parents and her sister owned Conversion Chemical Co. (Conversion), which engaged in the development, manufacture and sale of chemicals to the electroplating industry. Appellant George Rynne, Stephanie's husband, was a Conversion employee. Initially a development chemist, he rose through the ranks of Conversion and became vice president in charge of sales. He was familiar with all of Conversion's trade secrets and patented processes.

In 1974, appellee Minnesota Mining and Manufacturing Co. (3M) purchased Conversion in order to acquire its patented electroplating technology. As part of the sale, 3M acquired Conversion's United States Patent Nos. 3,171,765, 3,729,394, and 3,769,182, and Conversion's application for what later became patent 4,070,165, each relating to methods of electroplating or refinishing metals. After the sale, George Rynne worked for 3M as a general sales manager in 3M's electroplating operation.

George Rynne left 3M in February 1977. The next month, George and Stephanie Rynne established appellant Eco-Chem, Inc. (ECI), a Minnesota corporation. Stephanie

Rynne became president of ECI, George Rynne became Secretary-Treasurer. Stephanie owned 80% of ECI's stock; two salesmen each owned 10%. ECI entered the electroplating business, selling chemicals produced according to formulae developed by George Rynne while he worked at Conversion. In 1978, prior to the current suit, the Rynnes left Minnesota and moved to Georgia.

In January 1979, 3M filed this action against ECI, in the Minnesota district court, alleging that ECI had infringed the patents 3M acquired in the purchase of Conversion. After seven extensions of time, ECI finally answered, admitting jurisdiction and venue. 3M then served ECI with interrogatories and a request for production of documents. In the interim, the Rynnes decided to disband ECI. ECI's response to the discovery request then was (in full text):

> Defendant, Eco-Chem, Inc. [ECI] is an inactive Minnesota corporation with no employees and with no operations in Minnesota or elsewhere. Consequently, Defendant is unable to respond to Plaintiff's First Set of Interrogatories and First Request for Production of Documents.

On 3M's motion, and after a hearing (at which ECI was represented by counsel), the district court (on December 11, 1979) entered a default judgment of patent infringement against ECI, pursuant to Fed. R.Civ.P. 37(d), for failure to answer the interrogatories and comply with the request for inspection of documents.[1] The judgment enjoined ECI from further infringement.

After the institution of this suit the Rynnes established (late in 1979) Eco-Chem Ltd. (ECL), a Georgia corporation. The stockholders of ECI exchanged their stock for ECL shares. The Rynnes converted all of ECI's assets to ECL,[2] including the formulae, customer lists, trademarks and in-

---

1. The original recommendation for such a default judgment was made by a magistrate. Though ECI had ten days in which to object to that recommendation, it filed no such objection and thereupon the district court accepted the magistrate's recommendation.

2. The one exception was ECI's holding of 3M shares, which Stephanie Rynne took herself.

ventory. Checks made out to ECI were deposited in ECL's account. The Rynnes informed their customers that ECL had succeeded ECI. Consequently, ECI became, and to this day remains, completely judgment proof.

On August 15, 1980, 3M moved in the Minnesota district court to add the Rynnes and ECL as parties to this suit pursuant to Rule 25(c) of the Federal Rules of Civil Procedure. All of these parties were properly served with notice of the motion. After a hearing concerning the relationship between ECI, ECL and the Rynnes—at which the Rynnes and ECL had full opportunity to appear and present evidence, and the Rynnes did so appear—the district court granted (February 1983) the motion to add the Rynnes and ECL "as successors in interest and alter egos" of ECI. The court then ordered post-judgment discovery and a hearing on an award of damages.[3]

By order and accompanying memorandum of March 16, 1984, the court awarded plaintiff damages in the amount of $235,906.28, which it then doubled pursuant to 35 U.S.C. § 284 (1982). As to three of the patents, the court calculated the quantum of damages by determining the amount of infringing products sold by defendants, and multiplying that amount by 3M's profits on similar sales. With respect to one patent, the court awarded reasonable royalties. The court also awarded 3M attorney's fees in the amount of $228,225.91 and pre-judgment interest of $51,470.12. The total award was $751,508.59.

In May 1983 the appellants moved the court under Rule 60(b), F.R.Civ.P., for relief from the original default judgment against ECI.[4] The court denied the motion because the motion was time barred, the

appellants alleged no meritorious defense in any but the vaguest and most conclusory terms, and as defendants they had deliberately defaulted. ECI appeals from the denial of this motion.

On April 3, 1984, defendants filed a motion for a new trial or for modification of the default judgment under Rules 59 and 52, F.R.Civ.P., respectively. The court denied the motion on the basis of its findings accompanying the original default judgment, and because appellants failed to point to any new evidence not existing at the time of the initial hearing on the default judgment. Appellants appealed from this decision, which was consolidated with their appeal from the district court's denial of their Rule 60(b) motion for relief from judgment. Both appeals are before us now. (There is no separate appeal from the order of March 19, 1984 awarding damages and fees.)

## II.

Appellants argue that the district court erred when it entered the original default judgment against ECI without first issuing an order compelling ECI to answer the interrogatories. The argument before us has turned on the nature of ECI's "response." At issue is whether ECI's "response" to the interrogatories, set forth *supra*, constituted a complete failure to serve answers to the interrogatories, and thus permitted sanctions without such an order under Rule 37(d), F.R.Civ.P. Appellants claim that their response was merely evasive and incomplete, in which case an order directing a more complete response is said to be necessary under Rule 37(a) and (b) prior to the imposition of sanctions.[5]

---

**3.** The damages hearings were conducted before a magistrate whose decision and recommendations were adopted by the district court.

**4.** Some confusion exists as to whether ECI had abandoned an earlier Rule 60(b) motion (filed in December 1980). Appellants had never scheduled a hearing on that earlier motion. The district court treated the May 1983 motion as a renewal of the earlier motion. We will

review the decision denying the motion on those terms.

**5.** Rule 37 of the Federal Rules of Civil Procedure states in pertinent part:

(a) Motion for Order Compelling Discovery. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:

\* \* \* \* \* \*

Appellants' contention that ECI's failure merely constituted a partial or incomplete answer is inconsistent with ECI's own conduct. That company specifically stated that it was "unable to respond" to the interrogatories. To say now that this missive constituted some sort of an answer flies directly in the face of what the message actually says—that appellants were unable to and would not respond. The district judge determined that ECI meant what it said and that it wilfully defaulted—this was not error.[6]

If we were to accept appellants' argument, the full force of Rule 37(d) could be rendered virtually meaningless. A party could simply send its opponents a letter refusing to comply with a discovery request, confident that it would face no more serious sanction than a court order directing compliance. This result is plainly inconsistent with the purpose of Rule 37(d), *i.e.*, to allow the courts to punish a full and wilful noncompliance with the federal rules on discovery, and to deter such conduct in the future. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (*per curiam*); *see also* Fed.R.Civ.P. 1 (the federal rules "shall be construed to secure a just, speedy and inexpensive determination of every action").[7]

> (2) Motion. If a deponent fails to answer a question propounded or submitted under Rules 30 or 31, or a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a), or a party fails to answer an interrogatory submitted under Rule 33, or if a party, in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. When taking a deposition on oral examination, the proponent of the question may complete or adjourn the examination before he applies for an order.
>
> * * * * * *
>
> (3) Evasive or Incomplete Answer. For purposes of this subdivision an evasive or incomplete answer is to be treated as a failure to answer.
>
> * * * * * *
>
> (b) *Failure to Comply with Order.*
>
> * * * * * *
>
> (2) Sanctions by court in which action is pending. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> * * * * * *
>
> (C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;
>
> (d) Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection. If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails ... (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
>
> The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c).

6. In view of the nature of ECI's response and of the district court's finding that appellants deliberately defaulted, we do not consider it significant that the magistrate, in recommending default, happened to say that ECI had failed "to serve *adequate* answers" and "*adequate* written responses" (emphasis added). That choice of language did not adequately characterize what ECI had actually done.

7. We note, too, that ECI's response to the interrogatory was incorrect as a matter of law.

The cases upon which appellants rely for the proposition that a prior order was necessary in this case before the court could enter a default judgment are inapposite. Special emphasis is placed on *Laclede Gas Co. v. G.W. Warnecke Corp.*, 604 F.2d 561 (8th Cir.1979). Appellants cite the following part of that opinion:

> [Rule 37(d) ] authorizes district courts to 'make such orders in regard to the failure as are just,' by reference including specifically the sanction provided in Rule 37(b)(2)(C) of dismissal of all or part of the action. Rule 37(b)(2)(C) allows dismissal as a sanction for failure to comply with the discovery orders of the trial court. A prior order, however, is essential. [Citation omitted].

604 F.2d at 565. But the point of this discussion was that, in those cases where a party has answered the interrogatories inadequately (as Warnecke had), Rule 37(b)(2)(C) calls for an order compelling a better and more complete response as a mandatory predicate to the imposition of sanctions. This has nothing to do with a situation in which Rule 37(d) applies, *i.e.*, a complete refusal. Appellants fail to note the two sentences immediately preceding this discussion, in which the *Laclede* court said: "The district court [mistakenly] dismissed Warnecke's counterclaim under Rule 37(d). Rule 37(d) applies only where a failure to answer interrogatories amounts to a total failure to respond." *Id.* In the current case, unlike *Laclede*, the district court appropriately decided that ECI's action amounted to a "total failure to respond." Thus, sanctions under Rule 37(d) were permissible without a prior order. 4A Moore's Federal Practice, ¶ 37.05 (2d ed. 1984).

■ Appellants also say that, in these circumstances, the district court should not have imposed the severest sanction available. Our inquiry in this regard, however, is "not whether ... the Court of Appeals would as an original matter have [entered a default judgment]; it is whether the District Court abused its discretion in so doing." *National Hockey League, supra,* 427 U.S. at 642, 96 S.Ct. at 2780. In this situation, the district court did not abuse its discretion. ECI had from the beginning of this litigation engaged in dilatory tactics, including seven extensions of time to answer the complaint, failure to appear at scheduled hearings, and failure to schedule hearings on its own motions. In the interim, ECI was disbanded, apparently without notice to 3M or the district court, and then ECI sought to avoid its duties under the federal rules by claiming that ECI no longer existed. The district court has specifically concluded that ECI deliberately defaulted. Given these facts, the district court's response was reasonable and it did not exceed its discretion.

### III.

ECL and the Rynnes protest, in addition, that the trial court erred when it joined them as parties. (This issue was presented and preserved in their Rule 60(b) and new trial motions which are now before us.) Their primary point is that the district court lacked *in personam* jurisdiction over them and that venue in Minnesota was improper under the special provision for venue in patent cases.[8] The court below concluded that ECL and the Rynnes were transferees or alter egos of ECI and accordingly the court had subject matter and *in personam* jurisdiction over them. We review only the district court's holdings that these appellants were successors in interest to or alter egos of ECI, and that, by virtue of that status, the jurisdiction

---

Even after it is completely forfeited, a Minnesota corporation remains in existence for three years "for the purpose of prosecuting and defending actions." Minn.Stat.Ann. § 300.59 (West 1969); *Mississippi Valley Development Corp. v. Colonial Enterprises, Inc.,* 300 Minn. 66, 217 N.W.2d 760 (1974).

**8.** The patent venue statute, 28 U.S.C. § 1400(b) (1982), provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where defendant has committed acts of infringement and has a regular and established place of business.

and venue requirements were satisfied in this instance.[9]

## A.

Rule 25(c) of the Federal Rules of Civil Procedure provides:

*Transfer of Interest.* In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of motion shall be made as provided in subdivision (a) of this rule.[10]

The record clearly establishes that ECL was the transferee of ECI's assets, trademarks, customer lists and good-will.[11] Indeed, ECL was merely a continuation of ECI, as evidenced by one-for-one transfer of ECL shares to ECI stockholders, the notification to ECI's customers that ECL had succeeded ECI, the application of ECL's name on inventory formerly owned by ECI, and the use of one bank account for both corporations during the transition period. *See, Travis v. Harris Corp.,* 565 F.2d 443 (7th Cir.1977) ("The indicia of 'continuation' are a common identity of stock, directors and stockholders and the existence of only one corporation at the completion of the transfer.") The district court properly found that ECL became in effect a new corporate name for the same corporate body.

Conceding this, ECL argues that, being a Georgia corporation with no ties to Minnesota, the district court had no jurisdiction over it and could not assume jurisdiction under the guise of a joinder under Rule 25(c). The parties have not cited, nor have we discovered, any cases which have considered this exact point. But cases such as *Jones v. Village of Proctorville, Ohio,* 303 F.2d 311 (6th Cir.1962) (*per curiam*), have considered whether a court retains subject matter jurisdiction when a substitution under Rule 25(c) destroys complete diversity of citizenship among the parties. *Jones* was a case brought by the United States on certain bonds and in which an individual who purchased the bonds was substituted as plaintiff. Defendant argued that the substitution deprived the court of subject matter jurisdiction as he and the new plaintiff were citizens of the same state. The court ruled that the substitution "did not defeat the Court's jurisdiction once that jurisdiction had been invoked properly by Jones' predecessor in interest." *Id.* at 313, *citing Mullen v. Torrance,* 9 Wheat. 537, 6 L.Ed. 154 (1824) (Marshall, C.J.); *accord, Fred Harvey, Inc. v. Mooney,* 526 F.2d 608 (7th Cir.1975); *Television Reception Corp. v. Dunbar,* 426 F.2d 174 (6th Cir.1970). These cases effectively, if implicitly, stand for the proposition that substitution of a party under Rule 25(c) does not violate the proscription of Rule 82 that the rules "not be construed to extend or limit the jurisdiction of the United States district courts."[12]

Other decisions have considered objections to *in personam* jurisdiction raised by parties substituted under Rule 25(a) (substitution of an executor or administrator for a deceased party). The courts that have considered this problem have uniformly held "that if *in personam* jurisdiction has been previously acquired of the original party, then the *in personam* jurisdic-

---

**9.** Insofar as the court below may possibly have concluded alternatively that it had jurisdiction over the Rynnes under the Minnesota Long Arm Statute, we do not rely on or consider that proposition.

**10.** Rule 25(a) provides, in relevant part, that a substitution motion "may be served in any judicial district."

**11.** Appellants argue that ECL cannot be a successor in interest to ECI because the court also found ECL to be ECI's alter ego. They claim that one cannot transfer assets to oneself. First,

we see no reason why the same set of facts cannot establish a party as alter ego and also a successor in interest, as when a stockholder transfers assets to a corporation which he completely dominates. Second, the district court's order is more comfortably read as joining ECL as successor in interest or, in the alternative, alter ego of ECI.

**12.** As for the service of process, Rule 25(a) and (c), *supra,* explicitly permit the service of process on ECL outside of Minnesota.

tion continues over the substituted party." *Bertsch v. Canterbury*, 18 F.R.D. 23, 27 (S.D.Cal.1955) (dictum); *accord, Ransom v. Brennan*, 46 F.R.D. 16 (S.D.Tex.1969), *rev'd on other grounds*, 437 F.2d 513 (5th Cir.), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971).

█ If the court had *in personam* jurisdiction over the substituted individuals in *Bertsch* and *Ransom*, then *a fortiori* the district court had jurisdiction here over a properly served corporation joined under Rule 25(c).[13] Rule 25(a) substitutions occur in the unexpected event that a litigant dies; the burden of prosecuting or defending the case then falls on a third party who is suddenly thrust into the breach. As the facts of the current case demonstrate, the events leading up to a Rule 25(c) motion often differ in that the decision to transfer assets is conscious and planned. When the successor in interest voluntarily steps into the shoes of its predecessor, it assumes the obligations of the predecessor's pending litigation if the court properly assumed jurisdiction over the predecessor and if the successor is properly served (as here). Were this not so, the owners of the property could merely transfer legal ownership of the assets from one shell corporation to another in a different jurisdiction, putting a party whose initial suit satisfied the jurisdictional requirements to the immense burden of chasing the involved assets from courtroom to courtroom. The very process of substitution or joinder of successors in interest, in these circumstances, demands that the court have jurisdiction over the new parties if they have had, as in this case, notice and opportunity to challenge their joinder or substitution.

Moreover, the appellants' argument regarding jurisdiction misperceives the nature of the joinder of a successor in inter-est under Rule 25(c). The transferee is not joined because its substantive rights are in question; rather, the transferee is brought into court solely because it has come to own the property in issue. The merits of the case, and the disposition of the property, are still determined vis-a-vis the originally named parties. The Sixth Circuit made this point plain in *Television Reception Corp.*, 426 F.2d 174, *supra*, in which plaintiff moved to join as defendant the successor to the particular cable television franchise. The transferor moved to dismiss on the ground that joining the transferee defeated the diversity of citizenship requirement on which the court's subject matter jurisdiction was based. The court of appeals held that the joinder was a procedural mechanism for the court's convenience and did not affect the substantive aspects of the case:

> The joinder did not alter the respective substantive rights of the transferor or of the transferee *pendente lite*, and, regardless of whether the transferee was made a party to the franchise depended on the outcome of the litigation between Television Reception and the transferor, Dunbar-Murphy & Co. [citations omitted]. Joinder merely represented a discretionary determination by the District Judge that Commonwealth Cable's presence would facilitate his conduct of the litigation.

*Id.* at 178; *see also, Matter of Covington Grain Co.*, 638 F.2d 1362, 1364 (5th Cir. 1981) ("Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the [original] action to continue unabated when an interest in the lawsuit changes hands"); 7A Wright & Miller, Federal Practice and Procedure § 1958 at 664–65 ("The action may be continued by or against the original party, and

---

**13.** The magistrate's order, adopted by the district court, specifically found that ECL and the Rynnes were properly served under Rule 25.

Appellants' rely on the holding in *Panther Pumps & Equipment Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 24 (7th Cir.1977), *cert. denied sub nom., Beck v. Morrison Pump Co.*, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978), that Universal Spray Systems, Inc. could not be added (under Rule 25(c)) as a successor in interest, as support for their position that appellants could not be added in the present case. The difference between the two cases is that Universal Spray Systems, Inc. unlike appellants, was never served and therefore never before that district court.

the judgment wil be binding on his successor in interest even though he is not named. . . . An order of joinder is merely a discretionary determination by the trial court that the transferee's presence would facilitate the conduct of the litigation."); cf. *Panther Pumps & Equipment Co. v. Hydrocraft, Inc., supra,* 566 F.2d at 24–25 (the transferee's right to a hearing under the due process clause is limited to a determination of whether he is a successor in interest and thus liable on the judgment, and not whether he committed the acts with which the transferor was charged).

In the present case, neither 3M nor the court below says that ECL has infringed any patents. ECL did not even exist when the significant events took place. ECL thus was joined, not to determine its own liability, but merely because it succeeded to the assets from which 3M may satisfy its judgment. For these purposes, the court could properly join ECL as a party to the case.

The same reasoning applies to the question of venue. Venue relates to the locale in which a suit may properly be instituted, and not to the power of the court to hear the case or reach the parties. *Neirbo Co. v. Bethlehem Corp.,* 308 U.S. 165, 167–68, 60 S.Ct. 153, 154–155, 84 L.Ed. 167 (1939). Thus, as the court stated in *Dolgow v. Anderson,* 45 F.R.D. 470, 472–73 (E.D.N.Y.1968):

A line of cases long predating this venue provision and beginning at least with the opinion of Chief Justice Marshall in Mollan v. Torrance [*supra*], has firmly established the proposition that a federal court cannot be ousted of jurisdiction by a mere change of parties during the course of litigation. . . .

. . . This jurisdictional principle is a fortiori applicable to venue. Like jurisdiction, venue "once properly established * * * [is] unaffected by the change in parties, since it relates to the institution of the suit." 4 Moore's Federal Practice ¶ 25.05 at p. 517 n. 1.

3M brought this case in the District of Minnesota consistently with the patent venue statute. Just as joinder of a new party does not disturb the district court's jurisdiction, we see no logical rationale for concluding that that joinder in any way disturbs venue properly established as an initial matter.

**B.**

Whether or not the Rynnes are direct successors in interest of ECI, and thus joinable as parties under Rule 25(c), the district court also found that they were alter egos of ECI, and that it had *in personam* jurisdiction over the Rynnes by virtue of its jurisdiction over their corporation ECI.[14] The court made a similar ruling with regard to venue.

By ruling that the Rynnes were ECI's alter egos, the district court disregarded the fact that the Rynnes had established ECI as a separate corporate entity. The corporate form is not readily brushed aside. However,

When substantial ownership of all the stock of a corporation in a single individual is combined with other factors clearly supporting disregard of the corporate fiction on grounds of fundamental equity and fairness, courts have experienced little difficulty and have shown no hesitancy in applying what is described as the "alter ego" or instrumentality theory in order to cast aside the corporate shield and to fasten liability on the individual stockholder.

1 W. Fletcher, Cyclopedia of the Law of Private Corporations § 41.35 (rev. ed. 1983) (footnote omitted). One of the "other factors" to which courts have looked when "piercing the corporate veil" is whether insistence on the corporate form would enable the stockholder to avoid legal liability. "Posttort activity, when conducted to strip the corporation of its assets in anticipation of impending legal liability, may be considered in making the determination whether to disregard the corporate entity." *Id.* § 45 (footnote omitted); *See Rainbo Gold*

14. ECL was likewise found to be the alter ego of ECI.

*Mines v. Magnus*, 371 F.2d 519 (10th Cir. 1966) (court may ignore corporate entity to satisfy a judgment).

■ The district court found, and the record fully supports the conclusion, that recognition of the separate corporate form is not required in this case. Stephanie Rynne owned 80% of ECI's stock, while the other 20% were in the hands of ECI's two salesmen. George Rynne possessed all of the corporation's know-how. The Rynnes operated ECI without the oversight of a formal board of directors, without consulting with the minority stockholders, and without adhering to the corporate formalities which normally serve to buttress the recognition of the corporation as a separate entity. The district court also concluded that the Rynnes purposely manipulated ECI so as to thwart 3M's recovery of its judgment. This is precisely the situation in which courts feel most comfortable in using their equitable powers to sweep away the strict legal separation between corporation and stockholders. *Id.* The court below did not abuse its discretion in this regard.

The precedents establish that a court which has jurisdiction over a corporation has jurisdiction over its alter egos. In *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634 (8th Cir.1975), the plaintiff charged defendant corporation and its chief executive officer with breach of contract. The individual defendant asserted that the court had no jurisdiction over him, as he lacked the requisite contacts with the state. The court flatly rejected this argument: "[I]f the corporation is Havey's alter ego, its contacts are his and due process is satisfied." *Id.* at 637; *see also, International Controls Corp. v. Vesco*, 490 F.2d 1334, 1350 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974) (by using its equitable power to pierce the corporate veil the court had jurisdiction over a corpo-

ration by virtue of the activities of its dominant shareholder).

The courts have also held that piercing the corporate veil is appropriate in order to establish venue under the patent venue statutes. Almost fifty years ago, one court noted that "infringement within the district by a wholly owned subsidiary can be considered infringement by the parent corporation for the purposes of [venue] ... provided fraud upon or injustice to the plaintiff are present." *Acme Card System Co. v. Remington Rand Business Service, Inc.*, 21 F.Supp. 742 (D.Md.1937). More recently, in *Leach Co. v. General Sani-Can Manufacturing Co.*, 393 F.2d 183 (7th Cir.1968), the court ruled that venue in a patent infringement case was proper with regard to one corporation by virtue of the acts of another, intimately connected, corporation. The fact that these cases dealt with two corporations is of no moment. The patent venue statute makes no distinction between individuals and corporations, and we see no reason why venue is not proper with regard to individual stockholders (who are alter egos of the corporation) by virtue of the corporation's acts where venue would be proper as to a corporate parent or affiliate. *Cf. Carolyn Chenilles, Inc. v. Ostow & Jacobs, Inc.*, 168 F.Supp. 894 (S.D.N.Y.1958) (venue proper as to a corporation by virtue of the acts of its two stockholders). The district court held correctly that the venue as to the Rynnes was proper.

## IV.

Finally, appellants say that the district court erred in awarding damages and abused its discretion in denying their motion for a new trial. Their argument rests primarily on the contention that the district court ignored new evidence that the patents on which 3M sued were invalid because they were fraudulently obtained.[15] Even aside from the cardinal fact that Con-

---

**15.** Appellants claim also that the district court erred in finding that no noninfringing substitute exists for the patented electroplating processes and should not have awarded lost profits. The court's factual determination, however, was not clearly erroneous and the court committed no error in this regard.

version (the earlier Rynne-dominated company) originally acquired three of the patents and submitted the application for the fourth, we find no basis for interfering with the district court's conclusion that appellants presented these new allegations in too vague and conclusory a manner to re-open the default judgment. This point seems to be mainly a thin boilerplate afterthought.

For these reasons, the decisions of the district court denying appellants' motions for relief from judgment and for a new trial are affirmed.

AFFIRMED.

NIES, Circuit Judge, concurring in part.

I join in the majority opinion except in Part III. In *Scott v. Mego International, Inc.*, 519 F.Supp. 1118, 1126 (D.Minn.1981), the court (interpreting the law of the forum) held that a parent corporation may subject itself to jurisdiction of the state of Minnesota by virtue of its subsidiary's activities there if one corporation is operated as an instrumentality or adjunct of the other, i.e., as an alter ego. In reaching this conclusion, the court relied on *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management Inc.*, 519 F.2d 634 (8th Cir.1975), which held that, under Iowa law, a corporation and an individual were alter egos and could be treated as one and the same for jurisdictional purposes.

The finding that ECL and the Rynnes are alter egos of ECI is not clearly erroneous. Thus, *in personam* jurisdiction and venue requirements with respect to ECL and the Rynnes are not independently required. Due process with respect to those parties is satisfied by affording a hearing to determine whether the parties were alter egos and, of course, by proper service of process. *Zenith Corp. v. Hazeltine*, 395 U.S. 100, 111, 89 S.Ct. 1562, 1570, 23 L.Ed.2d 129 (1969). No challenge is made that the hearing or service was inadequate.

In the absence of Minnesota precedent, I prefer to reserve a decision on the broader issue of substitution or addition of a party on the basis of being a successor in interest.